BRENARD MFG. CO. v. LITTLE.*

(Division A. Nov. 9, 1925.)

[105 So. 762.   No. 25145.]

1. SALES. *Contract held to authorize buyer to return only machines not resold at end of three years' agency.*

   Contract of sale of phonographs with exclusive agency to buyer for three years *held* not to authorize buyer to return the machines at any time, but only machines not resold at end of three years' agency.

2. PRINCIPAL AND AGENT. *Contract of sale of phonograph with exclusive agency for resale not shown breached by another person's possession of machine of same character.*

   Contract of sale of phonographs giving buyer exclusive agency for their sale is not shown to have been breached by mere proof of another person in the town having a machine of the same character.

3. TRIAL. *Peremptory instruction on conflicting testimony error.*

   Peremptory instruction may not be given, where there is sharp conflict in the testimony.

   *Headnotes 1. Sales, 35 Cyc., p. 254; 2. Agency, 2 C. J., Section 726; 3. Trial, 38 Cyc., p. 1568.

APPEAL from circuit court of Noxubee county.
HON. J. I. STURDIVANT, Judge.

Action by the Brenard Manufacturing Company against W. R. Little. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Loving & Loving,* for appellant.

If the court was in error as to its construction of the contract, there should have been a directed verdict for the appellant. A mere glance is sufficient to convince the court that there is such a conflict in the evidence as to demand that this case  be submitted to a jury, provided, the appellant was not entitled to a directed verdict.

As we construe the contract under which the notes were given, this contract means what it says, and that the appellee was in duty bound to receive, keep, handle and try to sell these instruments for the period of the contract.  It seems to us that when one can enter into such a contract for such a period of time, and then in a few weeks after attempting to handle the goods purchased under the same, and having failed to make sales, or satisfactory sales, to consider the contract breached on the part of the appellant, and return the goods, and claim successfully non-liability under the contract, that one in this country in reference to contracts would be, and assume the position of one of the world's famous— infamous—crowned heads, who considered treaties as mere "scraps of paper."

This case, as we see it, is on all fours with *Brenard Mfg. Co.* v. *Sumrall,* 104 So. 160, and his acknowledgment of the goods as shown by his letter of February 21, 1922, is almost identical with the letter of Sumrall in the case cited.

Doubtless the two contracts were exactly the same, with possible exceptions as to amounts and dates, and the notes were in the same form, with possible exceptions as to amounts and dates; and Sumrall in the cited case seemingly plead fraud, while it is not plead in the present

case; and in the holding under that case it occurs to us that this contract is valid and binding; and the appellee breached it by not keeping these instruments for the required time, and making an effort to sell them. Therefore, he should not be allowed to come up now and claim a breach on the part of the appellant; and especially in view of the fact that at the time he returned them that he claimed no breach, but financial depression as the reason for the return; and at a later date still claimed no breach, not even intimating a breach, but asked for an adjustment of the matter.

We submit that the court below erred in its construction placed upon the contract, and erred in directing a verdict in favor of the appellee, and submit that the court should have given an instruction directing a verdict for the appellant, and ask this court to reverse this cause, and to enter a judgment in favor of the appellant for the amount due on the said notes.

*I. L. Dorroh,* for appellee.

The court committed no error in instucting the jury for the defendant. The view of the court was that the contract  did not state specifically that it was for a period of three years, and there was nothing binding on the appellee to maintain the contract for that period of time, or any other period of time.

To get the intention of the parties therefrom we contend that all of the said contract must be looked into. 13 C. J. 525; *Gonong* v. *Brown,* 88 Miss. 53; *Spengler* v. *Stiles-Tull Lbr. Co.,* 94 Miss. 780; *Goosey* v. *Goosey,* 48 Miss. 210. And when we consider the *whole* instrument in order to get the intention of the parties who made the contract we readily see that the contract is one that could be terminated by sending or returning the goods as provided therein. Little was not obligated to keep the goods for three years, nor for any other definite time, but only

so long until he saw that his sales were not amounting to three hundred and twenty eight dollars. So when he returned the goods that ended the contract, and the Brenard Manufacturing Company should have cancelled and surrendered his notes as they had agreed to do.

It would seem to us from the evidence that there was no material conflict on the question that the Brenard Manufacturing Company had unequivocally breached its contract with W. R. Little, in that they had given him the exclusive right to sell the Golden Throated Claxtonolas in the town of Macon for a period of three years and that during the time this contract was in effect, and before Little returned the machines to them they had breached their contract by placing or allowing to be placed on display and sale in another store in the said town of Macon one of their Golden Throated Claxtonolas, whereupon Little immediately returned the ones which they had sold him, by prepaid freight, to their factory at Geneva, Ill.

*Brenard Manufacturing Company* v. *Sumrall,* 104 So. 160, is in no sense of the word authority in the instant case. In the Sumrall case it does not appear that Sumrall even returned the goods and terminated the contract. There is nothing in that case to indicate Sumrall sought to terminate his contract by the returning of the goods. In that case it was alleged that the contract was a fraudulent one, and that it was sought to vary the terms by a subsequent oral contract. We are unable to see any point of similarity in the Sumrall case and the instant case.

We desire to call the court's attention to the fact that there is no agreement on the part of the appellee, W. R. Little, in this matter to keep these goods for a term of three years, or any specific length of time.

The court below was correct in its interpretation of the contract, and there was no error committed by the court in construing that contract as not being for three

years, or any other definite length of time, and that upon the return of the goods by Little, appellee, to the Brenard Manufacturing Company, appellant, that the contract was terminated.

McGOWEN, J., delivered the opinion of the court.

Brenard Manufacturing Company filed a declaration in the circuit court of Noxubee county based upon five promissory notes for sixty dollars each and one for twenty-eight dollars; the notes having been executed contemporaneously with the execution of an order signed by W. R. Little, directed to the Brenard Manufacturing Company, for two ''Golden Throated Claxtonolas.'' The order was accepted by the company and the ''Claxtonolas'' were delivered, in due time, to the defendant, Little, without objection on his part. This order was dated January 30, 1922, was promptly received by the Brenard Manufacturing Company, and approved on February 2, 1922. W. R. Little wrote the company acknowledging the receipt of the ''Claxtonolas'' and asked for certain advertising matter, which was promptly shipped to him. The defendant did not pay his notes due February and March 30th thereafter, and about April 1st the company began to insist upon payment of these notes. Several letters were written, to which they testified there was no response; but on May 18, 1922, Little wrote the following letter:

''On account of depressed financial conditions I was unable to meet the payments on the Claxtonolas, and as my privilege license expired this month, and I was unable to renew same, I was compelled to return the two machines.

''I am inclosing herewith prepaid bill of lading for same so that you will not be at any expense, regretting very much that I was unable to dispose of the machines in a profitable way to you and myself, and assuring you

that if I can be of any assistance to you in placing any of your machines in this territory I will gladly do so, as I think Golden Throated Claxtonola is one of the best machines I ever saw both in appearance and tone.''

In this letter it will be seen that the only objection urged by him to the payment of the notes was his depressed financial condition and his inability to meet the payments; also that he said:

''The Golden Throated Claxtonola is one of the best machines I ever saw both in appearance and tone.''

Little shipped the Claxtonolas back to the plaintiff on May 17th, and again, on May 24th, the defendant, Little, wrote the company that he would have met the notes if it had not been for adverse conditions; that he found it impossible to pay, and concluded the said letter with this statement:

''Wont you please make some kind of an adjustment for me in this matter; as I just cannot pay you? Thanking you in advance for your consideration in this matter,'' etc.

The defendant pleaded the general issue, and under the general issue gave notice that he would show that he had returned the goods in accordance with the terms of the order contract; that he had returned the goods in accordance with an agreement made with the salesman, Walker, before the execution of the contract that he might do so if the machines were not promptly sold. He further gave notice that the contract was breached by the plaintiff, in that the contract provided that he was to have the exclusive agency at Macon, Miss., for the sale of the Golden Throated Claxtonola, but that plaintiff failed and refused to give the defendant the exclusive agency in the territory as provided for in the contract; that the defendant permitted and allowed and did sell another Claxtonola in the town of Macon to another firm at or about the same time his contract was made and while his contract was in full force and effect.

He further set out that the notes were executed by the defendant to the plaintiff with the distinct understanding and agreement that they were not to be collected until the sale of the said Claxtonolas had been made, and that the reshipping of the Claxtonolas to the plaintiff discharged the notes.

Loveland, one of the partners of the Brenard Manufacturing Company, testified with great particularity that they had complied with every stipulation of the contract; that they had not breached the contract by appointing another agent in Macon, Miss.; denied any knowledge of any other Claxtonola than defendant's being in the town of Macon, or that he was notified by the defendant as to the particular Claxtonola as to which the plea was interposed.

After setting out the order for the two Claxtonolas and the advertising matter, there occurs this language:

"Exclusive Agency Agreement. You, the Brenard Manufacturing Company, grant me the exclusive agency for your Golden Throated Claxtonola and phonographic records in my town for a period of three years in accordance with this agreement."

The next section provides that, as fast as the defendant sold the articles, he had the right to reorder; and the manufacturing company agreed to accept his customers' notes when properly indorsed, to be applied on the reorders.

The next clause, which we quote in part, is as follows:

"Guarantee of Sales. If my sales under this contract do not amount to three hundred and twenty-eight dollars you agree to either pay me the difference in cash or repurchase these Golden Throated Claxtonolas and records if returned to you in good order, and you are to send your bond in the sum of three hundred and twenty-eight dollars to protect me under the conditions of this contract."

The next clause of the order provides that the purchaser is to furnish ten names of prospects and in sixty days to furnish ten to twenty-five names and addresses of persons who might be interested, and to apply certain certificates to be sent to the "prospects" in part payment on the retail price.

The next clause provides that the company might send a special salesman into the territory to do field work and promote the sale of the articles through the defendant's agency. Unusual delays from strikes, fires, and accidents were to extend the agreement for a like period, and provided that this order could not be countermanded.

Loveland, one of the partners and owners of the Brenard Manufacturing Company, which was a partnership, testified that they had complied with every condition of the order; that no complaint had been made of their noncompliance; that the life of the contract was three years, and maintained that no right was vested in the defendant thereby to return the Claxtonolas until the expiration of the term, three years; and testified specifically that no other Claxtonola had been sold in that territory by their company and denied any knowledge of the sale of a Claxtonola at Macon; denied that they had authorized any such sale by any person and stated that, if there was any other machine of that kind in Macon, it must have been bought elsewhere and shipped in there without their knowledge or consent; stated specifically that at the time he was testifying he had no knowledge that there was any such machine offered for sale.

After introducing the correspondence and deposition of Loveland, the plaintiff rested his case, and the defendant, Little, testified that Walker told him that his proposition was to buy these Claxtonolas and if they did not sell they would take them back, and that was the inducement that induced him to purchase these Claxtonolas; that in pursuance of which he signed the notes sued on in this case.

141 Miss.—49.

770 BRENARD MFG. CO. *v.* LITTLE. [Sup. Ct.

This testimony was objected to and finally, we take it, excluded by the court. Mr. Little testified that he signed the contract on the 30th of January, and that it was about thirty days before he received the articles ordered. But, as a matter of fact, it was only twenty-one days as shown by his letter in this regard. He further said that he sent the merchandise back in May, 1922, and that, while his contract was in force, a man came to see him and wanted to collect his account; testified that this man placed another Claxtonola in another store for display in the town of Macon, of the character of Claxtonola that was in his store, and shortly after that time the Claxtonolas he had purchased were returned. He said that the man who came to see him offered to compromise with him for seventy-five dollars, and that he didn't see the notes which he had executed. He further said he did not know whether the plaintiff had knowledge of the machine being placed with the man by the name of Crigler; that he did not know where Crigler got it, but that he did know it was manufactured by the plaintiff; that he never notified the Brenard Manufacturing Company in any way of this machine being on display at Crigler's.

There are only two plausible theories upon which the court could have granted the defendant a peremptory instruction:

First, that the contract was not a time contract for three years, but under it the plaintiff had the right to return the goods at any time he was dissatisfied.

Taking the contract as a whole, this cannot be maintained as the clause quoted as to the three years' term did not give the defendant the right to reship the articles at his option whenever he failed to make a sale. It is clear from the language used that the contract was a three year contract and that the provision was for the return of the articles on hand at the termination of the contract.

Second, that the company breached its contract when it appeared that another merchant in the town of Macon

was possessed of a Claxtonola of the same character as those sold to the defendant, and for the sale of which in that territory Little was to have the exclusive right for a period of three years.

In the first place it is clear that the attention of the Brenard Manufacturing Company was never called to this matter and the only ground upon which the defendant returned the Claxtonolas was that he was unable to pay for them. He never gave them an opportunity to investigate or make any inquiry. He concealed his defense in so far as this record shows, and the proof that another party in the same town had a Claxtonola of the same character is not sufficient to show a breach of the contract of the exclusive agency on the part of the Brenard Manufacturing Company. The defendant never gave the company an opportunity to know about this alleged breach, and, on the face of it, it would seem to be an afterthought, the plaintiff having positively testified that they had not breached it; that they had no knowledge of the claim; and not being even asked if they knew a man named Crigler, another Macon merchant alleged by defendant to have on display a Claxtonola.

We are constrained to say that, even if the testimony of Little tended to show a breach, it was positively contradicted in the deposition of Loveland, and, where there is a sharp conflict in the testimony, it is manifest error to give a peremptory instruction. The testimony quoted does not constitute a breach of the contract as we view it, but the record does not disclose that the plaintiff asked for a peremptory instruction, and perhaps another trial may shed more light on this entire matter.

This case is largely controlled by the cases of *Brenard Manufacturing Co.* v. *Sumrall*, 139 Miss. 507, 104 So. 160, and *Brenard Manufacturing Co.* v. *B. M. De Shazo*, 105 So. 766, decided by this court on October 26th, not yet [officially] reported.

*Reversed and remanded.*