BRENARD MFG. CO. *v.* MILLER & ROBINSON.

(Division B. Dec. 1, 1930. Suggestion of Error Overruled, February 9, 1931.)

[131 So. 274. No. 29015.]

**D. M. Featherston,** of Holly Springs, for appellant.

Fant & Fant, of Holly Springs, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action against appellees in the circuit court of Marshall county on six promissory notes aggregating the sum of four hundred twenty-two dollars, which notes appellees had theretofore executed and delivered to appellant; and, in addition, a reasonable attorney's fee, as provided in the notes, which notes represented the purchase price of three "Golden Throated Claxtonolas," commonly called phonographs, and the exclusive right on the part of appellees to sell that make of phonograph in certain territory described in the contract of purchase. There was a trial resulting in a directed verdict and judgment for appellees, and from that judgment appellant prosecutes this appeal.

At the conclusion of the evidence, both parties asked for a directed verdict. Appellees' request was granted, and appellant's refused, and that action of the court is assigned and argued as error by the appellant.

The material facts in the case are undisputed. They are substantially as follows:

On the 16th day of November, 1922, appellant and appellees entered into the following contract in writing:

"The Brenard Manufacturing Company, Not Inc., Iowa City, Iowa. Gentleman:—Upon your approval of this order and agency contract deliver to me at your earliest convenience, f. o. b. factory or distributing point, the articles mentioned below on the terms and conditions

herein set forth and no others, all of which I have read and found complete and satisfactory, in payment of which I hereby hand you my notes aggregating four hundred twenty-two dollars, which you are to cancel and return to me if this sole and complete agreement is not approved by you.

"Articles to be Delivered Under this Agreement and Agency Contract.

Goods Purchased in This Order.

| | |
|---|---|
| One Golden-Throated Claxtonola Style 'A'— retail price | $225.00 |
| One Golden-Throated Claxtonola Style 'B'—retail price | 175.00 |
| One Golden-Throated Claxtonola Style 'C'—retail price | 150.00 |
| Twelve double-faced 10-inch records—retail price each .75 | 9.00 |
| Total retail price | $559.00 |

Net price to dealer on agency contract, including services and privileges stated below ..........$422.00

"The Following Supplies Furnished

"500 Claxtonola Circulars, about 6x20 inches, without dealer's imprint.

"One Blank for fifty names provided for below.

"Twenty-five Blanks for 'The sixty day list of names' provided for below. For specifications and equipment of Golden-Throated Claxtonolas see reverse side.

"Exclusive Agency Agreement.

"You, the Brenard Manufacturing Company, hereby grant me the exclusive agency subject to this agreement for your line of Golden-Throated Claxtonola Phonographs in my town for a period of three years in accordance with this agreement.

"Reorders. Forty per cent trade discount from retail prices for cash in thirty days from date of shipment,

or ninety day note settlement with reorder. Twenty-five per cent additional discount from above trade discount price will be allowed where cash accompanies the reorder. As fast as I sell Golden-Throated Claxtonolas I agree to reorder to replace same and where I desire it you agree to accept my customers' notes or installment paper, where properly endorsed to you, to apply on such reorder; sixty per cent of each cash collection on such paper to be credited on reorders and the remaining forty per cent of each cash collection to be mailed to me.

"Guarantee of sales. If my sales under this contract do not amount to four hundred twenty-two dollars you agree to either pay me the difference in cash or repurchase these Claxtonolas and records if returned to you in good order, and you are to send your bond in the sum of four hundred twenty-two dollars to protect me in addition to this contract.

"To make the above contract binding upon you I agree to furnish you within thirty (30) days of date hereof fifty names and addresses of persons who may be interested in securing Claxtonolas with whom you are to take up correspondence, each sixty (60) days to furnish you from ten to twenty-five names and addresses of persons who may be interested in securing Claxtonolas to whom you are to send appropriate advertising matter, take up shipments promptly upon arrival, properly display Claxtonolas in my store, use ordinary diligence, in the sale thereof, promptly meet all obligations entered into under this contract, and to furnish you all the reasonable information you request to enable you to assist in the sale of Claxtonolas.

"You are to have the right to send a special salesman into my territory at any time to do field work and promote the sale of Claxtonolas through my agency.

"Unusual delays from strikes, fires, accidents, or other causes beyond our control, shall extend this agreement for a like period.

"In consideration of tying up exclusive territory and to protect you in your special methods and plans in your expenditures this order cannot be countermanded."

The notes provided for in the contract were executed by appellees, and delivered to appellant. It will be noted that the contract is what is generally known as an order contract. Upon the execution of the contract and notes, they were forwarded to appellant for its approval and acceptance, as provided by the terms of the contract. Four days after the execution of the contract, on November 20, 1922, appellant wrote appellees a letter, which the latter received, approving and accepting the contract and the notes, and stating that the goods would be duly shipped. In that letter appellant sent appellees copies of the six notes executed in accordance with the provisions of the contract. On November 24, 1922, four days after that letter was written by appellant, appellees acknowledged the receipt of it by letter, and in their letter they undertook to rescind the contract and countermand the order for the phonographs, for certain reasons set out in their letter, unnecessary to mention. On the 27th of November, 1922, appellant acknowleded the receipt of that letter from appellees, in which it refused to agree to a rescission of the contract and the countermanding of the order for the phonographs. In that letter appellant stated that the phonographs had already been shipped; but the evidence in the case showed that this was not true, and the phonographs were not shipped until the 16th day of December, 1922.

On the arrival of the shipment at the express office at Waterford, in this state, the express agent at that place notified appellees of the receipt of the goods, and the latter refused to take them out of the express office and receive them. They remained in the express office at Waterford until, under the rules and regulations of the express company, they were about to be sold for their

express charges, of which fact appellant was notified by the express company. Thereupon appellant paid the express charges, in order to save the goods from being sold, and instructed the express agent to send them to T. J. Hickey, at Janesville, Wisconsin, for storage, subject to further orders from the appellant.

The phonographs were manufactured by the Hiawatha Phonograph Company, at Geneva, Illinois, for, and under the direction of, appellant. The Hiawatha Phonograph Company went into the hands of a receiver, and T. J. Hickey took over the business in some capacity. Appellant ordered Hickey to send the phonographs to appellant's warehouse at Iowa City, Iowa, which was done, and there they remained up to the time of the trial. The evidence showed that appellant stored the phonographs in its warehouse, separate and apart from its other goods, and held them, not as its property, but as the property of appellees.

Appellees undertake to justify the action of the court in directing a verdict in their behalf on the following grounds: (1) That the order contract, which was the basis of the notes on which suit was brought, was unilateral, and therefore not binding on appellee; (2) that there was no consideration for the execution of the notes; (3) appellant had no right to recover the purchase price of the phonographs, even though appellees breached the contract; (4) there was a failure of consideration for the execution of the note.

Those questions will be considered in the order stated:

1. Until appellant accepted and approved the order contract, it was a unilateral contract; but, after its acceptance and approval by appellant, it ceased to be unilateral, and was binding on both parties. There was then a valid promise for a valid promise, each being a consideration for the other. Couret v. Conner, 118 Miss. 374, 79 So. 230; Chorley v. Miles F. Bixler Co. (Miss.)

127 So. 294, 296; Brenard Mfg. Co. v. Little, 141 Miss. 762, 105 So. 762.

2. What has been said with reference to whether or not the contract was unilateral answers appellees' contention that it was without consideration.

3. The evidence showed that appellees undertook to rescind the contract and countermand the order before appellant delivered the phonographs to the carrier for shipment. Appellees contend that at most this was only a breach of the contract on their part; and, the title to the phonographs not having passed to them, under the law, appellant's remedy was not a suit on the contract for the purchase price of the phonograph, but for damages for the breach of the contract. Although this question was not expressly discussed by the court in Chorley v. Miles F. Bixler Company, supra, it was there involved. That case was much like the present case, being an action on a contract very similar in several respects to the one here involved. The purchaser countermanded the order before the goods were delivered to the carrier; therefore before the title passed to the purchaser. We quote from the opinion in that case: "It will be observed from the contract, set out above, that there was a stipulation to the effect that 'salesman has no authority to change or add to these terms, except in writing, on this original order which is subject to our acceptance; not subject to countermand. Delivery to carrier is delivery to the purchaser; purchaser to pay the charges, jewelry shipped by express, showcase by freight.' Following this the contract is signed by the Miles F. Bixler Company, and below that signature, 'Please ship the above goods upon above terms,' dated 5/16, and signed 'Miss Jessie Chorley.' Under the terms of the contract, the goods were shipped upon the order, which was subject to be approved by the Miles F. Bixler Company, and, under the contract, delivery to carrier, the express company, was delivery to

the purchaser. The order was not subject to countermand, and was complete upon the acceptance and delivery of the jewelry to the carrier. The plaintiff expressly notified the defendant that they would not rescind the contract, and she would be expected to pay it. The fact that they afterwards took the returned merchandise out of the express office and stored it to save charge and expenses did not relieve Miss Chorley from the obligation to pay according to her contract."

In American Cotton Co. v. Herring, 84 Miss. 693, 37 So. 117, the personal property there involved had been delivered in part when the contract was breached. However, in that case the court, in its opinion, laid down the following principles, which the opinion stated were sustained by the authorities. "On the breach of a contract to purchase personal property the seller may: (a) Complete the contract on his part, and sue for the contract price; or (b) Treat the contract as ended, retain the property as his own, and sue for the difference between the market value and the contract price; or (c) Sell the property at public or private sale for the best price he can obtain, and sue for the difference between the price realized and the contract price."

Appellees rely largely on Acme Food Co. v. Older, 64 W. Va. 255, 61 S. E. 235, 243, 17 L. R. A. (N. S.) 807, and the note to that case. It was there held that neither an action for goods bargained and sold, nor for goods sold and delivered, will lie if the title to the goods has not passed to the vendee. The writer of the note in that case sums up the authorities discussed in this language: "If the binding offer to accept be not withdrawn, or the agreement to take the goods not broken, delivery is made with the assent of the purchaser and under a 'meeting of the minds of the parties,' and accords with a basic principle of the law of contracts. But, if the contract be broken and the consent of the purchaser withdrawn,

before delivery, the title does not pass by the assent of the parties, and there is no power in a court of law to compel specific performance of any kind of a contract. It has no remedy appropriate to, nor capable of administering, such relief. As the damages are deemed full and adequate compensation even by courts of equity, they ordinarily refuse specific performance of contracts of sale of personal property. Both courts recognized the right of a party to an executory contract of such character to break it and force the other party to take damages in lieu of the performance of the promise, covenant, or other duty. And the injured party can rightfully do no act by which his damages will be increased, as abandoning the property to waste or destruction. On the contrary, he is bound to minimize the damages when it can be readily done.''

He excludes from the discussion those cases dealing with the question of the seller's remedy upon the refusal of the purchaser to taker an article manufactured specially for him. It is true that in the present case the evidence does not show that the phonographs involved were specially manufactured for the appellees. But there is this important feature distinguishing this case from that case and the authorities analyzed in the note thereto: In the present case appellees not only purchased from appellant the phonographs, but, in addition, the exclusive right to sell the phonographs in certain territory specified in the contract; and, in addition, the contract contains this stipulation: ''In consideration of tying up exclusive territory, and to protect you in your special methods and plans in your expenditures, this order cannot be countermanded.''

This provision in the contract meant something. We think a fair interpretation of the inhibition against the order being countermanded is that the appellees should have no right to breach the contract before the title to the

phonographs passed to them. Of course, without that provision appellees had no such right. The purpose of the parties was to emphasize the binding force of the contract in that respect on appellees. Appellees having breached the contract, we think appellant should have the right to that remedy most favorable to it. Especially is this true under the facts and circumstances of this case. Appellees, having done the wrong—breached the contract—will not be permitted to drive appellant to that remedy most favorable to appellees. Appellant had the right to select any one of the three remedies laid down in American Cotton Co. v. Herring, supra. Appellant chose to treat the contract as executed, and sued for the contract price.

Another view, which we think is of a good deal of force: There would have been much difficulty in proving with certainty and accuracy the damages which appellant suffered on account of appellees' breach of that provision of the contract to sell the phonographs in a certain specified territory. Taking that view into consideration, the remedy adopted by appellant was more adequate than the remedy of damages for a breach of the contract.

4. What has been said, we think, answers appellee's contention that there had been a total failure of consideration for the notes sued on. Appellees lay a good deal of stress on the fact that appellant took the goods back and then waited more than two years before bringing suit. It was held in Chorley v. Miles F. Bixler Co., supra, that a seller, by taking goods rejected by the buyer, and storing them for the buyer's account, did not release the buyer from the duty to pay for the goods. If appellant had not paid the express charges, and had the goods returned to it, to be held on appellees' account, they would have been sacrificed for the express charges. It was the right of appellant to take steps to avoid this; and, so far as the delay in bringing suit is concerned, it

has no material bearing on the case. The statute of limitations alone fixes the time within which such actions as this shall be brought.

Appellees stress in the argument the fact that appellant gave them no notice of its purpose to have the goods returned on their account in order to prevent their sale for express charges. We are unable to see any reason why appellant should have given appellees such notice. It would have been useless, because appellees had, in most emphatic terms, refused to accept the goods.

The material facts in this case being undisputed, it follows from what we have said that the court should have directed a verdict for the appellant instead of for the appellees.

Reversed, and judgment here for appellant.