BURNSIDE *et al. v.* GULF REFINING Co.

(Division A.   May 15, 1933.   Suggestion of Error Overruled July 17, 1933.)

[148  So.  219.   No. 30555.]

**Engle & Laub** and **Whittington & Brown,** all of Natchez, for appellants.

Hirsh, **Dent** & **Landau**, of Vicksburg, and **Kennedy** & **Geisenberger**, of Natchez, for appellee, The Gulf Refining Company.

464

Kennedy & Geisenberger, of Natchez, for appellee, J. Balfour Miller.

466

Argued orally by **S. B. Laub** and **Chas. F. Engle**, for appellant, and by **W. A. Geisenberger** and **R. L. Dent**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

This is an action by the mother and next of kin of Russell C. Burnside, a minor eleven years of age, to recover damages accruing to them by reason of the fact that Russell was "burned to a crisp" and died from the effects of an explosion of an automobile tank on the streets of Natchez. After all the evidence was in, the court below gave a peremptory instruction for both defendants; and the plaintiffs in the court below prosecute an appeal here.

The facts necessary to understand the case are: Appellee Miller owned a Nash Cabriolet, and on December 24, 1931, he drove his car along the streets of Natchez to a filling station of the appellee Gulf Refining Company, which was located on the corner of Pearl and Franklin streets, near the business section of the city. He directed an employee of the station to fill the car's tank with gasoline. Miller left the car and proceeded to his place of business at about ten o'clock in the morning. He did not see the tank filled, but about one o'clock he returned to a point near the filling station where his car was parked on a vacant lot, of which he had control, walked to the rear of the car, saw the tank and the cap attached to the nozzle, and there appeared to be nothing out of the ordinary in connection therewith. He observed no sign of leaking gasoline. From there he drove less than two blocks, parked his car on a slope of the public street at a place designated for such purposes by the municipal authorities, and went into the Eola Hotel. Twenty-five or thirty minutes later he was notified that his car was on fire.

One witness testified that he was standing on the sidewalk, saw a young man light a cigarette, and throw the

lighted match in the gutter which caught fire and burned up to Miller's car, and there burned on the nozzle of the tank. It appears that, so long as the gasoline was allowed to burn through the nozzle, there was no explosion. The city firemen came up shortly after the blaze was discovered and put Foamite on the tank; one man threw his coat over the cap and attempted to remove it, and at that time the explosion occurred and injured the Burnside child.

The nozzle extended about four inches above the tank, and through this the gasoline was deposited in the tank off the car. The nozzle had a cap with a vent hole in it, and the cap was fastened by a half twist.

It appears that the fire must have continued for twenty or twenty-five minutes before the tank exploded. The tank was a regular standard size, and had no defect or leak in it. The cap was regular, and there was nothing unusual about the car, the tank, or its fixtures. No person is shown to have known that there was anything unusual, abnormal, or irregular about the car until the fire was discovered burning from the nozzle of the tank thereof. An expert testified that gasoline was highly inflammable, and also that, when it was removed from a storage tank under the surface of the ground to a tank above ground, it would expand to the extent of about a pint to each ten gallons.

Appellants contend that negligence is presumable as against the appellees on two theories: Either that the tank was overfilled with gasoline by the Gulf Refining Company, or that the screw cap was improperly placed thereon by an employee of the company.

The liability of Miller is predicated upon the allegation that he violated the following ordinance, to wit:

"An ordinance to regulate traffic and the use of the streets and alleys in the city of Natchez, Mississippi, by pedestrians, horses, animals, automobiles and vehicles of

every kind and description, to define the term used in said ordinance; to make it a misdemeanor to violate any rule or regulation prescribed in the ordinance; to, repeal all ordinances in conflict with this ordinance and for other purposes governing the use of the streets and traffic in said city. . . .

"Section 43. Be it further ordained that any person who shall permit a motor vehicle to stand upon the streets of the city olf Natchez with a leaky carburetor or other appliance or part of said motor vehicle, permitting gasoline or oil to drip on the street or streets of the said city shall be guilty of a misdemeanor and shall be liable to the penalties imposed by this ordinance."

This unfortunate accident occurred on Christmas Eve at a time when fireworks and the usual Christmas celebration was in progress on the streets olf the city of Natchez.

We are of the opinion that the lower court properly granted a peremptory instruction in this case. So far as the appellee Gulf Refining Company is concerned, there is not the slightest proof that the tank was over-filled, neither is there any proof that the screw cap was not properly placed thereon. Employees of the Gulf Refining Company had put gasoline in the tank of the car some three hours belfore the car was removed from where they placed it, and then twenty-five or thirty minutes after the removal fire developed in the vicinity of the car. What caused the gasoline to flow from the nozzle of the tank, four inches above the compartment of the tank, is wholly unexplained.

Many cases are cited by appellants with regard to gasoline explosions, but none so nearly applicable as the case of Standard Oil Company of Kentucky v. Evans, 154 Miss. 475, 122 So. 735, in which case it was shown that the oil company was negligent, in that its employee permitted the gasoline to overflow lfrom the tank as he was

putting it therein. He was negligent in not attending to his duty in transferring the gasoline to the car; the tank was filled, ran over, and the automobile was hot, which caused the gasoline to explode and injure the owner of the car. This court held there was liability, and pointed directly to the negligence. On no theory can it be said on this evidence that the Gulf Refining Company or its agents or employees were negligent, because the record is entirely silent; nor can it be said that they as reasonable people could anticipate that the gasoline would flow from the tank, if it did do so, into the gutter. It is not shown that the Gulf Refining Company had any knowledge whatever as to what use would be made of the car after it put gasoline in it, and, if the owner parked the car on a slope to the extent that the gasoline would flow from the tank up through the nozzle and fall to the ground, that certainly was an event which a reasonable person would not be expected to anticipate.

As we said in the case of Illinois Cent. R. Co. v. Bloodworth, 145 So. 333, 336: "Precaution is a duty only so far as there is reason for apprehension. Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable, or extraordinary occurrence, though such happening is within the range of possibilities. . . . Probability arises in the law of negligence when viewed from the standpoint of the judgment of a reasonably prudent man, as a reasonable thing to be expected. Remote possibilities do not constitute negligence from the judicial standpoint." Again in Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 498, we said: "As to conjectures, these do not belong to courts, juries, or witnesses—decrees and judgments may not be based on conjectures."

Under the theory of res ipsa loquitur, there was too much time and too many actors connected with the fire for this accident to be ascribed to a negligent putting of

the gasoline into the tank. Neither can Miller, the owner, be' held liable, ffor it is not shown that he had any notice that there was any defect in the tank, nozzle, or cap of his car, and the ordinance certainly did not create liability where no act of his, or omission of his, brought about the injury in this case. He did not permit the nozzle to leak, nor was it shown that the nozzle was leaky within the sense and meaning of the ordinance above quoted. He had no notice thereof, nor was there anything to put him on notice. The owner did not fail in any duty, nor did he omit to do anything, so far as this record is concerned, which brought about this injury. There is nothing in the range of either of the defendants' conduct which a reasonably prudent man could anticipate would bring about probable harm to anybody. The transaction was the common ordinary servicing with gasoline of a normal motorcar equipped with ordinary tank and usual fixtures.

There are no facts or circumstances here ffrom which negligence on the part of either Miller or the Gulf Refining Company can be fairly inferred.

Affirmed.