MAGNOLIA LUMBER CORPORATION, INC. *v.* CZERWIEC LUMBER COMPANY, INC.

In Banc. Dec. 12, 1949

No. 37255 (43 So. (2d) 204)

Franklin & Franklin, and **Barnett, Barnett & Jones,** for appellant.

Alexander & Alexander, for appellee.

**Hall, J.**

In August, 1947, Fred H. Cline, a Chicago lumber broker, having previously received from appellant's predecessor in business a list of lumber in stock available for sale, telephoned appellant's president at Jackson, Mississippi, and inquired whether the stock was still available, and upon being advised that the lumber was available and upon receiving prices thereon, Cline took the matter up with the president of appellee and received authority to place with appellant orders for sixteen carloads thereof at the quoted prices. Written orders for three cars were placed on August 15, and for the remaining thirteen cars on August 18, 1947. These orders were made up in quadruplicate; a blue copy on each order was

sent to appellee, a white copy was retained by Cline, and a pink copy and a white copy were mailed to appellant; the pink copy was to be retained by appellant and the white copy had on the bottom a written acceptance of the order for the signature of the appellant. Appellant promptly executed the written acceptance on each white copy, agreeing to make shipment within two weeks to thirty days, and mailed these white copies back to Cline, who delivered them to appellee.

These orders were on printed blanks supplied by Cline. They showed the name of the shipper, the name of the purchaser, the routing and destination of the shipment, and the specifications and price on each car load. There was printed on each order a statement to the effect that it was subject to acceptance by the shipper, that the sale is based upon freight rates in force on the date of order, and that material shipped shall be in accordance with Association grading rules, and Association terms were to govern unless otherwise specified. There was also printed thereon a statement that the order is handled by Cline on a commission basis, that his obligation is only as a sales agent, and that he is not to be held for contingencies and exigencies beyond his control. On the blue copy which went to appellee there was printed a statement to the effect that the above is a copy of your order as placed with the shipper; if not correct, notify me at once; in the absence of immediate advices, this order will be considered correct by all parties concerned. On the pink copy sent to appellant there was printed "Wire me immediately if for any reason you cannot enter this order, otherwise I will understand same is accepted."

Appellant shipped one car of lumber to appellee on October 7, 1947, after the time for filling the orders had expired, and appellee promptly accepted and paid for the same and insisted upon shipment of the remainder of the orders. The price of lumber having increased

in the meantime appellant declined to make any further shipments unless appellee would agree to pay an increase of $8 per thousand feet. Appellee declined to do this and brought suit against appellant for the recovery of damages in the amount of the price increase between the date of the orders and the date of breach of the contract.

Appellant defended upon the ground that there was no valid contract for sale of the lumber because under the custom and practice of lumber dealers in like situations a contract is not consummated and completed without a ratification or acceptance of the order by the purchaser; that Cline was not an agent for and could not bind appellee, and that appellant was under no obligation to ship the lumber without appellee's authorization, acceptance or agreement to pay for the same.

At the trial it was shown without contradiction that Cline was duly authorized to place the orders with appellant, and it was not denied that appellant accepted the orders in writing and obligated itself to make shipment within the period above stated. But appellant contended that notwithstanding these facts there was no completed contract until appellee had accepted appellant's acceptance of the order, and offered evidence, which was admitted over appellee's objection, to show that such was the custom in the lumber trade. The trial court refused a peremptory instruction requested by appellee and submitted the case to a jury which returned a verdict in favor of appellant. Thereupon appellee made a motion for a judgment in its favor non obstante veredicto, which motion was sustained, the verdict was set aside, and a judgment was entered in favor of appellee for the amount sued for, from which this appeal is prosecuted.

It is contended by appellant that there was never any valid contract between it and appellee because appellee did not accept appellant's acceptance of the orders. We do not agree with this position. It is undis-

puted that Cline was duly authorized to place the orders with appellant, and it is undisputed that appellant accepted the orders. This was sufficient to make the transaction a completed contract. The language of this Court in Bernard Manufacturing Co. v. Miller & Robinson, 158 Miss. 892, 131 So. 274, 276, is directly in point: "Until appellant accepted and approved the order contract, it was a unilateral contract; but, after its acceptance and approval by appellant, it ceased to be unilateral, and was binding on both parties. There was then a valid promise for a valid promise, each being a consideration for the other." See also Portsmouth Cotton Oil Refining Corporation v. Madrid Cotton Oil Company, 200 Ala. 634, 77 So. 8.

Appellant also contends that it was entitled to show the custom and usage in the lumber trade with reference to acceptance by the buyer of an acceptance by seller of the buyer's order, and that this evidence should have been permitted by the trial court to go to the jury for decision. The three witnesses offered by appellant were all lumbermen residing in Jackson, Mississippi. Instead of showing the custom in the lumber industry generally in situations such as heretofore detailed, each of these witnesses testified as to what he, himself, usually did. At best the evidence was very weak in tending to establish a custom of the trade generally. Plainly its purpose was to show that there was in fact no contract between the parties when as a matter of law under the undisputed evidence, as hereinabove shown, there was a perfectly valid and enforceable contract. In the case of Robinson v. Turfitt, 192 Miss. 160, 4 So. (2d) 884, 885, this Court said: "It is true that evidence of custom and usage is admissible in certain classes of cases, but the courts recognize the danger of such evidence and do not look upon it with favor, and, to be admissible in those cases, its relevancy and probative value must be clearly shown. 20 Am. Jur. p. 310, Section

333. It is said in 25 C.J.S., Customs and Usages, Section 17, page 94, 'Customs and usages are strictly construed and nothing will be held to be within them which it is not proved that they cover.' " And in Fireman's Fund Insurance Company v. Williams, 170 Miss. 199, 154 So. 545, 547, it was said: "Next, it is insisted that the custom and usage alleged is sufficient in this case, independent of the oral agreement, to create an enforceable contract by implication. We are unable to perceive the validity of this contention. The patent and obvious answer to this view is that it is elementary law that usage and custom cannot create a contract or liability where none otherwise exists, and custom and usage may not be invoked in contravention of law. 17 C.J. 449, par. 7; National Savings Bank of District of Columbia v. Ward, 100 U.S. 195, 25 L. Ed. 621; First National Bank of Cincinnati v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766. We think it is the universal rule that custom or usage may not be invoked to change the law. Generally, custom may be read into a contract, or the incidents thereof, or in construing the contract." Since there was a lawful and valid contract between appellant and appellee we are of the opinion that the proffered evidence of custom and usage was properly excluded when the verdict of the jury was set aside by the trial court.

It is lastly contended by appellant that the amount of appellee's damages was a question for determination by the jury. Where there is a substantial dispute as to the facts the position of appellant is of course, correct. ▉▉ In this case the appellee alleged and proved without objection or contradiction that an average carload of lumber contains 25,000 feet, and that the fifteen cars which appellant did not ship would have contained 375,000 feet of lumber. It was further proved by positive testimony that the class of lumber in question had advanced $10 per thousand feet at the time of breach of the contract, making appellee's total damage $3,750

which is the amount of the judgment. The only effort to- ward contradiction of the fact of this advance is found in the testimony of the president of appellant. He admitted that the price of lumber started going up "at the end of August or around the middle of September". He would not commit himself to any estimate as to how much it advanced. His testimony was wholly insufficient to raise a jury issue on the question of the amount of the appellee's damage, and we find no error in the action of the trial court in peremptorily fixing the amount at $3,750. The judgment of the lower court is therefore affirmed. Affirmed.

**Montgomery** and **Alexander, JJ.**, took no part in the consideration or decision of this case.