MERIDIAN STAR v. KAY, et al.

Division B. Apr. 23, 1951.

No. 37942 (52 So. (2d) 35)

538

Broach & Ethridge and M. V. B. Miller, for appellant.

Snow & Covington, for appellee.

**Roberds, P. J.**

In December, 1946, appellant, a corporation, was the publisher of a newspaper, and appellee, a partnership, operated a mercantile business, in the City of Meridian, Mississippi. In this opinion we will call appellant The Star and appellee Kay's. Kay's engaged The Star to run an advertisement in the paper of a clearance sale of its entire stock of fall and winter coats, suits and dresses at a reduction of one-fourth off the regular prices. Through error the merchandise was advertised for sale at fifty per cent off. Negotiations were had between the parties as to the best method to be adopted under the circumstances and Kay's elected to proceed with the sale at fifty per cent reduction. Kay's then sued The Star for damages for the error and recovered a judg-

ment for four thousand dollars. The Star appealed to this Court. The original opinion was handed down June 13, 1949, 207 Miss. 78, 41 So. (2d) 30, 10 A. L. R. (2d) 677, and the opinion on the suggestion of error was rendered July 14, 1949, 207 Miss. 91, 41 So. (2d) 746. These opinions set out the essential facts of the controversy and announce the governing principles of law. The case was reversed and remanded for a new trial. On the former appeal it was adjudged that the action was in tort; that liability existed against The Star for at least nominal damage and, in addition, for such actual damage as plaintiff might be able to establish by proper evidence as naturally resulted from such error, plaintiff being under duty to use reasonably available measures to mitigate the damage, and approved the method used by plaintiff to establish the amount of the damage. The former appeal left open on retrial (1) the establishment, by proper proof, of the actual amount of damage resulting from the error, (2) whether or not Kay's election to proceed with the sale at fifty per cent reduction, as erroneously advertised, rather than adopt one or all of the remedial methods suggested by The Star, was a reasonable action on the part of Kay's, and (3) whether the advertisement did, or did not, include fur coats. Retrial resulted in a verdict and judgment for Kay's in the amount of $1276.92, from which this appeal is taken by The Star.

Appellant raises a number of questions on this appeal but, in our view, it is only necessary to discuss three of them. They are, first, whether the evidence of usages and customs, as offered by appellant and excluded by the lower court, was competent; second, whether plaintiff failed to prove the amount of actual damage in the manner required by applicable rules of law and evidence; third, whether the jury should have been permitted to find, if it did so find, that fur coats were included within the advertisement.

On the first question it is disclosed that this error was discovered by Kay's around noon on Sunday, December 15th, date of its first publication; that The Star office was then closed; that, after some effort, Kay's contacted the advertising manager of The Star between seven and eight o'clock Monday morning, and they discussed the error and Kay's sought suggestions as to how the situation might be remedied; that the manager suggested that the next issue of the paper might carry a correction; The Star could give Kay's a letter admitting the error and also place a streamer above the store door acknowledging the error. Kay's then tried to contact the publisher, which he was not able to do until the middle of the afternoon, when the same remedial suggestions were made by the publisher. Mr. Kay, one of the partners, explained to both the advertising manager and the publisher that he did not think the situation could be remedied in this manner. He thought a correction in the paper that day, made after he had consulted the publisher, would be too late to notify customers of the error and prevent their appearing at the sale. Indeed, he explained to the publisher that many customers had already appeared at the store. As to the proposed letter and streamer, he explained to representatives of The Star that Kay's had been in business in Meridian for some thirteen years; that it had built up a reputation for honesty and fair dealing; that to call off the sale, or try to adjust it on the correct basis of one-fourth discount, would cause customers to lose confidence and faith in future sales, and the honesty and fair dealing of the merchant, and greatly damage Kay's; that it was not practicable to stand at the door and show customers the letter and call attention to the streamer acknowledging that the paper had made this mistake. Mr. Sidney Kay testified that Mr. Skewes, the publisher, agreed that the best course was to go ahead with the sale as advertised. He said Skewes told him to hold the sale as advertised and keep a record of the sales; that he would discuss

the matter with the advertising director of the paper and let Kay's hear from him; that nothing further was heard from The Star and on December 18th Kay's wrote The Star about the matter, saying the sales were running high; that Kay's was keeping "my sales tickets on merchandise sold, and which falls within the terms of the advertisement separate from tickets showing sales of merchandise which does not fall within that category". On the same day The Star replied to that letter, saying, in part, "As we understand the situation: our liability—if any—is limited to the difference between '¼ off' and '½ off' merchandise actually sold as a result of the 40-inch ad in question".

Now, in that situation defendant offered evidence of several newspaper publishers, as well as that of some merchants, of a number of mistakes which had been made in ads by newspapers, and that it was the custom of the newspapers to remedy that situation by a correction in the paper and by a letter to the advertiser acknowledging the error, and that, in the particular instances about which evidence was given, that the merchants accepted that adjustment of the errors. Most of these witnesses did not mention the streamer method of correction, although some of them did. As a part of this evidence defendant Star offered to introduce before the jury, and did introduce in the absence of the jury, the various advertisements about which this testimony was given. The trial court excluded this from the jury. Was this error?

It is pertinent to note in this connection that the verdict of the jury expressly confined the damage to the sales made on Monday, the first day of the sale. As to that damage, it is evident that a correction in Monday's paper would have gotten into the hands of customers too late to appreciably reduce the damage resulting from sales that day.

Again, while customs and usages may be relevant to, and admissible upon, a particular fact in issue, yet the courts recognize the danger of such evi-

dence and do not look upon it with favor, and, to be admissible, its relevancy and probative value must clearly appear. Magnolia Lumber Corporation v. Czerwiec Lumber Co., 207 Miss. 738, 43 So. (2d) 204. If otherwise admissible, it is clear the circumstances of the case being tried and that involved in the custom and usage testimony should be substantially the same in material respects. It is noted in the instances here offered that, in at least most of them, the circumstances were not substantially the same. In many of the proffered cases the error was in the price of one particular article; here the error applied to the entire stock of fall and winter coats, suits and dresses. In the case at bar the sale was a pre-Christmas sale—a ten-day sale—to run until Christmas day. It is shown that at this time, shortly subsequent to termination of World War II, the public was possessed of much money, especially returning ex-service men, and the people were in a buying mood, so much so that Kay's first day's sales amounted to $2983.11. That condition did not exist in the particular cases offered in evidence under the customs rule. We do not hold these differences alone would preclude competency of all the proferred cases, (it would as to some of them) but this requirement should be kept in mind in applying other principles applicable to the admission of customs and usages.

 ██ Evidence of custom and usages is much more restricted and limited in tort cases than in contract cases. However, within very limited and restricted scopes, such evidence is sometimes admitted in negligence cases in determining whether ordinary care has been exercised. In other words, the common usage of business may be regarded, in a proper case, as one test of negligence. ██ But no question as to negligence entered into the trial of this case. The defendant admitted it made the error and this Court on the appeal adjudicated there had been negligence. That question had been settled when the present case was tried. Also, it will be noted that

the nature of the evidence as to custom offered in this case, did not bear upon the question whether defendant was guilty of the tort, but upon how its effect could be alleviated, and also as showing that in the particular cases offered in evidence, the advertisers had consented to, or acquiesced in, the correction of the errors the papers had made, and the fact of the failure of those wronged to bring actions therefor. We know of no rule of evidence rendering competent in the tort case being tried evidence of the methods used in other tort cases to alleviate the damage resulting from the torts, and especially so as to evidence in such other cases that the wronged parties were agreeable to acceptance of the customary way of undertaking to lessen the damage, and of their willingness not to resort to litigation.

And, finally, █ in any case, in order to render evidence of a custom admissible, it must appear that plaintiff had actual knowledge of the existence of the custom, or that it was so general that the parties must be presumed to have had knowledge thereof when they acted with reference thereto. 20 Am. Jur. 311, Section 333. It is not shown Kay's had knowledge of such custom, nor that the manner of trying to correct these mistakes, offered to be proved by The Star, was so general and prevalent as that Kay's was chargeable with such notice.

The court made no error in excluding this testimony.

██ █ Appellant next says Kay's did not prove its damage as the law requires. It is sufficient on this to say that plaintiff attached to its declaration, and it proved by evidence, a list of the articles sold each day during the ten-day sale, together with the name of the purchaser and the price of the article. This was done by sales tickets, as suggested in the letter of December 18th from The Star to Kay's. These tickets, or copies of them, were delivered to The Star on December 26th. In addition to this, the method used in the trial of this case to prove damage was the same method used on

the former trial and in the opinion of this Court this language was used as to that method "We find no error in method pursued to establish the amount of the loss by appellee."

■■ Appellant next says the jury should not have been permitted to find, if it did so find, that fur coats were included within the merchandise advertised for sale. The property included, according to the wording of the ad, was "Entire stock of fall and winter coats, suits and dresses". Certainly on its face this wording would include fur coats just as much as wool coats or coats of any other particular material—at least, the jury had the right to so conclude, considered in connection with testimony that it was the intention to so include fur coats, and the fact that fur coats were actually sold at the sale. Indeed, that question was submitted to the jury by the defendant. It obtained an instruction telling the jurors that unless they believed from a preponderance of the evidence that the advertisement included fur coats, or if they were unable to determine whether the ad included fur coats, they could not return a verdict against The Star for any loss on fur coats. Defendant was granted another instruction informing the jurors that unless they believed from a preponderance of the testimony that the ad included fur coats and "that the public would have reasonably understood that it did include fur coats", or if they were unable to say from a preponderance of the testimony "whether such advertisement was so reasonably understood by the public to include fur coats", they could not return a verdict against defendant for any fur coats. Again, as above stated, the jury expressly limited the damage to that arising out of the first day's sales. It found the sales that day amounted to $2983.11, and then added "less merchandise we believe not covered by the ad . . . $429.27", finding the total amount of the discount to be $2553.84, charging defendant with one-half of the amount to wit: $1276.92. The bill of particulars shows that only one fur coat was sold the

first day, the price being $275. We cannot say whether the jury did or did not include the loss on that coat within its judgment.

As stated, other questions are raised, but we deem it unnecessary to discuss them in detail. We have given them all painstaking consideration. The law of the case was established on the former appeal. The reasonableness of Kay's conduct in electing to hold the sale was submitted to the jury. The jury simplified the issues by limiting the damage to the first day's sales. The plaintiff obtained eleven instructions and the defendant twenty-four, covering all contentions of the parties and the legal principles involved. If there be slight inconsistency in any of them this is cured when all are considered together. We find no reversible error, if error at all, in the case.

Affirmed.