CLARK *v.* GILMORE.

Mar. 10, 1952.

No. 38304 (57 So. (2d) 328)

Watkins & Eager, for appellants.

592

Barnett, Jones & Montgomery, for appellee.

**Lee, J.**

W. H. Gilmore sued C. E. and H. B. Clark, doing business as Clark Brothers Construction Company, to recover damages for personal injuries alleged to have been sustained by him as a proximate result of the negligent

operation of a truck. There was a jury verdict for $16,000; and from the judgment entered thereon, the Clarks appeal.

Gilmore died on December 16, 1950, after rendition of the judgment, and the cause was revived in the name of Mrs. W. H. Gilmore, Administratrix of his Estate.

The declaration charged that the plaintiff was run over and injured by a truck of the defendants. The alleged acts of negligence consisted of backing the truck without warning, without keeping a reasonable lookout, at an excessive rate of speed under the circumstances, and without having the truck under free, easy and reasonable control.

The answer of the defendants averred that the work was being done in the usual and customary manner, with which the plaintiff was familiar; that he voluntarily put himself in a place of danger and assumed the risks thereof; and that the defendants were guilty of no negligence which proximately caused or contributed to the alleged injuries.

Defendants had a contract with the City of Jackson to pave South West Street and the adjacent sidewalks. Gilmore was a construction inspector for the City. The pavement was 56 feet wide and had been completed several weeks previously. On January 24, 1949, defendants' crew returned to lay the sidewalks. Gilmore had discovered that it was necessary to lower the grade slightly, and he directed several of the men to do that work. Concrete could not be poured until the grade was ready. Defendants placed their platform and concrete mixer on the west side of the street, about 150 feet apart, and within about 2 feet of the curb. At the platform, employees took the cement out of sacks and dumped the contents in trucks. Gilmore checked those operations to see that the proper quantity was used. When a truck had obtained its load, it was the custom for the driver to back it south, along and within about 2 feet of the curb, to the concrete mixer.

George Roberts drove the first truck to the platform early that morning. Gilmore checked it and started back toward the place where the men were working on the grade When he was about half of the distance between the platform and the concrete mixer, one of the men inquired as to the proper way to fix a certain joint. Gilmore stopped and proceeded to give the necessary instruction. While doing this, he was standing several feet out in the street, facing the workmen to the west. He had left the Roberts truck at the platform about ten minutes before, and had been instructing the workmen for about five minutes. In the meantime, Roberts got his load, and started to backing the truck south toward the concrete mixer at a speed of 5 to 10 miles an hour, without looking behind or blowing the horn. No warning of any kind was given, except when the truck was almost upon Gilmore, several workmen hollered to the driver to "hold the truck", and one hollered to Gilmore that the truck was about to hit him. Gilmore testified that he did not see the truck and that he did not hear anyone call to the driver or to him. He further accounted for his position by saying that, while the motor of the concrete mixer was running, the operator was temporarily absent; that no concrete could be poured until the grade had been completed; and that he was not expecting the truck to come back while the operator of the mixer was not on the job.

J. L. Clark testified for the defendants that the method then being employed had been used throughout the project; that to the best of his knowledge from observing other contractors, it was a standard method; and that Gilmore had observed the operation on many occasions.

It was undisputed that Gilmore was an inspector on this project for several weeks, and that he had observed the way and manner in which defendants delivered the materials from the platform to the concrete mixer. It was further undisputed that, on this occasion, the truck had a good horn; that Roberts, while backing the truck, watched the curb on his left, trying to keep it in about

2 feet of the curb; that he did not look back at any time; that he did not blow his horn; and that no warning of the approach of the truck was given until immediately before its collision with Gilmore. Neither Gilmore nor Roberts, according to their evidence, heard the several outcries. Obviously if Roberts had looked back, he would have seen Gilmore; and likewise, if Gilmore had looked to his right, he would have seen the approaching truck. But Gilmore was not looking toward the backing truck, and Roberts was not looking where he was backing.

Under the circumstances, did the trial court err in submitting the cause to a jury, and should appellants' motion for a directed verdict have been sustained?

Appellants contend, and appellee concedes that, under Section 8148(d), Code 1942, the ordinary rules of the road did not apply to the operation of the truck on the occasion in question. Consequently the salutary rules as to keeping lookout and as to warnings and signals in backing motor vehicles on highways found in 60 C.J.S., Motor Vehicles, § 302, and 5 Am.Jur., Automobiles, pars. 330 and 331, have little application.

Appellee contends that the defendants were under a common law duty to give warning of the intention to back the truck, when any reasonable necessity therefor existed; and that a violation of such duty constituted negligence so long as reasonable prudence and regard for the safety of others required them, as reasonably prudent persons, to give warning and to keep a lookout for those who might reasonably be injured.

In 65 C.J.S., Negligence, § 1(2) it is said: ██ ██ "Of the numerous definitions of 'negligence,' among the best has been declared to be 'the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.'"

See also 38 Am.Jur., Negligence, par. 2, p. 643, where it is said : "* * * actionable negligence is the failure of one owing a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done, which omission or commission is the proximate cause of injury to the other."

In the case of Illinois Central Railroad Co. v. Mann, 141 Miss. 778, 106 So. 7, 8, the approach of the train was not signaled either by bell or whistle, but the crossing was neither a highway nor a street, although frequently used by pedestrians and vehicles, and this fact was known to the trainmen. Under those circumstances, this Court held that it was for the jury to say whether or not the operatives of the train should have signaled its approach to the crossing. It was there said that at common law "if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common-law principles.

The above principle is in accord with Mississippi Cotton Oil Co. v. Ellis, 72 Miss 191, 17 So. 214, and Gulf Refining Co. v. Ferrell, 165 Miss. 296, 147 So. 476.

This street had been opened for several weeks. If some member of the public, in the lawful use of the street, had been injured by the backing truck, liability would exist beyond cavil. If Roberts had looked to the rear before starting, evidently he would have seen Gilmore in the path of his backing truck. If he had blown the horn, it seems altogether probable that Gilmore would have been able to get out of the way of the truck inasmuch as his sense of hearing was normal. Besides, there were other members of the crew working in proximity to the street. It was reasonably foreseeable that one of them might go into the street in the prosecution of their work. If Roberts had looked to the rear of his truck, he would

have doubtless seen those workmen. The use of a highly dangerous method over a period of one or two months, without serious consequences, does not thereby establish and confirm such method to be reasonably safe. ██ The blind backing of a truck along a street, with no provision at all to warn persons or other employees in its path, and with no requirement that the driver shall be on the lookout, under the circumstances in this case, did not constitute reasonable care. At least it was a question for the jury.

To sustain their contention that they were entitled to a directed verdict appellants cite several cases, among which is Hammontree v. Cobb Construction Co., 168 Miss. 844, 152 So. 279, 282. The operation there was somewhat similar to the one here, except that it has more extensive. In that case, however, all trucks were required to blow their horns constantly as they backed in and that requirement was being observed by the very truck which struck Hammontree. Besides the warning system or method there employed was shown to be used and followed in such operations throughout the country; and the other suggested precautions were shown to be impracticable and unreasonable. The facts in that case are in marked contrast to the facts here, where the horn was not blown at all, and where no warning was given and no lookout was required. The Court there aptly said: ''Negligence is the failure to take such reasonable care as is taken or should be taken by experienced and prudent men.''

██ The cases of Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. (2d) 249, 9 So. (2d) 780; Gulf Refining Co. v. Williams, 183 Miss. 723, 185 So. 234; Shuptrine v. Herron, 182 Miss. 315, 180 So. 620; Illinois Central Railroad Co. v. Bloodworth, 166 Miss. 602, 145 So. 333; Burnside v. Gulf Refining Co., 166 Miss. 460, 148 So. 219, cited by appellants, deal with the question of foreseeability. They are not in point here, because an injury from the backing truck, under the proof in this record, was not

only reasonably foreseeable, but was almost inescapable if continued for any considerable length of time.

The motion for a directed verdict was therefore properly overruled.

 Appellants contend that they were entitled to a new trial on account of newly discovered evidence that Gilmore received $3,000 for the heart injury which he suffered in 1944.

The amended declaration charged : "Plaintiff alleges that prior to said accident he had been suffering with a heart condition, and that said heart condition has been greatly aggravated by said injuries, and that his heart has caused him severe pain, more severe and more often than prior to said accident, and plaintiff alleges that all of said injuries are permanent."

On cross-examination, Gilmore admitted that he had the original heart attack in Lecompte, Louisiana, in 1944. He was treated by Dr. T. M. Lett. He was working at the time for Crowell-Langley-Lunt Company and had been in their employ for 25 years. He moved to Jackson in 1945 and was treated thereafter by Dr. T. E. Wilson. He did not work from 1945 to 1947 on account of that trouble. He was laying off on account of the heart condition, resting up, because he did not think he was strong enough to work. The cross-examiner asked him no details about the attack or whether he received any compensation. The record contains abundant proof that Gilmore answered frankly every question that he knew. It seems safe to say that, if he had been asked about the $3,000 settlement, no doubt he would have related all the facts. The appellants were put on notice. If they wished to find out more about the origin of his heart trouble, or whether he received any compensation therefor, they should have asked him. The motion for a new trial on that ground was properly overruled.

 Appellants also complain that the verdict is excessive. Gilmore had recovered sufficiently from his heart attack to begin work for the City of Jackson in

1947. He continued in that employment until this injury. He was able to work and earned about $200 a month. As a result of being run over by the truck, he had bruises on his head, shoulder and hips, and, according to his evidence, his testicles and the passage to the bladder were severely mashed. When the swelling subsided, one of his testicles became smaller. He complained of severe pain therefrom and from his heart. He was unable to work after the injury.

Dr. Temple Ainsworth, in his examination, found a stricture. It was necessary to open up the passage by the use of sounds, and such treatment would be necessary at intervals as long as he lived—very painful experiences. In his opinion, the injury probably caused that condition and the damage to the the testicle, which he removed.

Dr. T. E. Wilson examined Gilmore immediately after the injury. While he found no evidence of direct damage to the heart, in his opinion, Gilmore's condition was much worse after the injury. He was not able to work and had sustained a substantial permanent injury.

With the abundant proof in this record, there is no basis on which it can reasonably be said that the amount of the verdict is too large for the pain and suffering, the loss of time and earning capacity, and the permanent nature of the injury. Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628; J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779; Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164.

The instructions, when considered together, give a fair announcement of the law. We find no reversible error in the record.

Affirmed.

McGehee, C. J., and Hall, Holmes and Arrington, JJ., concur.