COLE, et ux. *v.* DELCHAMPS, INC., et al.

No. 42620          May 13, 1963          152 So. 2d 911

*Bidwell Adam, Oscar B. Ladner,* Gulfport; *Forrest B. Jackson,* Jackson, for appellants.

*Eaton, Cottrell, Galloway & Lang, Morse & Morse,* Gulfport, for appellees.

Lee, P. J.

Suit was filed by Marcus W. Cole and wife, Mrs. Marjorie S. Cole, against Delchamps, Inc., and Gerald Coleman, its local manager, in the Circuit Court of Harrison County to recover damages for the death of their four year old son, William Gregory Cole, allegedly caused by the negligence of the defendants. The defendants, in their separate answers, denied each and

every material allegation of the declaration, and set up special defenses.

Delchamps, Inc., prior to and on September 19, 1961, operated a supermarket at 243 Porter Avenue in the City of Biloxi. The store building was about 100 feet wide, with four doors, two for entering and two for leaving. Adjacent to the building was a paved parking lot approximately 200 feet wide. Lanes, of a width of 25 feet with arrows pointing the proper directions for use, indicated the manner of entrance and exit for cars. Parking spaces were eight feet wide. There was sufficient area for parking 125 automobiles. About fifteen feet south of the doors was a ride machine, shaped like a small helicopter, operated by a third person for the entertainment of the children of patrons of the store. The charge was 10¢, and it was customarily ridden by only one child at the time. This machine had been in operation for about two years. The plaintiffs, accompanied by their son, had oftentimes been to the store as customers, and on numerous occasions, the little boy had ridden the machine. He was planning to ride again on the day that he was killed.

Mrs. Marjorie S. Cole, the mother, testified that she parked at a northwest angle in the second row from the front of the store; that she opened the door and got out, and her son slid out behind her; that, as she turned to shut the door, he headed for the helicopter; that she reached for him but could not catch him; that she called to him, but he kept going; that she followed and he ran between the rows of cars in front of a car that was headed south; and that just as he stepped from between the parked cars, a car moving at not more than 10 or 15 miles an hour struck him with its left front bumper, knocked him down, ran over him, and killed him.

Everett J. Hebert, twenty-four years of age and a nursing assistant at the Veterans' Administration Center, drove into the parking lot from Cemetery Road

and was headed south toward the beach. He said that he was driving about ten miles an hour and did not see the child until after he had struck something. He heard an outcry, stopped the car, and saw the little boy lying in the lane of traffic. He had been to the supermarket on other occasions and had seen many children on the parking lot on those occasions.

Neither of the witnesses saw an officer or watchman or guard, or other persons, directing movement of the traffic on the parking lot, or any warning or cautionary signs concerning traffic or its speed.

At the close of the evidence for the plaintiffs, the court sustained the defendants' requested peremptory instruction to find a verdict for them. From the judgment in accordance with the instruction, the plaintiffs appealed.

The appellants contend that the court erred in directing the jury to find a verdict for the defendants. They argue that the proof showed that the mother did everything possible to prevent her child, who could be guilty of no direct or contributory negligence, from running across a traffic lane which she knew and appreciated to be a place of danger; and that the operator of the car was guilty of no negligence in the manner of his operation of the car which caused the child's death. On the contrary, they say that the failure of the defendant to warn, to signal, to control traffic, to provide guards, and to mark off properly walkways and areas to be used by pedestrians constituted negligence, which was the sole, proximate cause of the death.

(Hn 1) Of course before the defendants can be held in any way answerable for the unfortunate death of this child, it must be shown that they were guilty of negligence proximately causing or contributing thereto. In Clark v. Gilmore, 213 Miss. 590, 57 So. 2d 328, (Hn 2) this Court cited with approval as a good definition of negligence the following statement from 65 C. J. S.,

Negligence, Sec. 1 (2), p. 304: "Of the numerous definitions of 'negligence', among the best has been declared to be 'the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.' " In the opinion in the above case, too, there was the following quotation also from 38 Am. Jur., Negligence, par. 2, p. 643, to wit:

"* * * actionable negligence is the failure of one owing a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done, which omission or commission is the proximate cause of injury to the other."

(Hn 3) Under their argument, the appellants attach no blame whatever either to the mother or to the operator of the car that ran over the child. Hebert had been to this supermarket many times. He had seen children about the parking lot on all occasions. He was twenty-four years of age and of course knew that it was necessary to exercise care under such circumstances and have his vehicle under control. Arrows pointed out the direction for automobiles to travel. What good would cautionary or warning signs have done him if he was already exercising reasonable care? It is unthinkable that the law would require the appellees to have enough traffic leaders to meet automobiles at the several entrances and walk in front of the vehicles to the parking spaces, which they would occupy, as a shield because of the possibility that some child might dart out from between parked cars into the pathway of moving automobiles; and, in like manner, provide for such a guide to the exits.

The little boy had ridden on the miniature helicopter on many occasions. He was going to ride again that day. His mother knew this. She tried to catch him.

She told him to stop. All of this was to no avail. She, more than any other person, naturally had the greatest concern for the safety of her son. In spite of her efforts, he got away from her and darted in front of the moving car to his death. What would a guard, or, for that matter, several guards have accomplished under such circumstances? Unless one perchance had been standing in the child's pathway, the same result might in all probability have happened.

As stated, the evidence showed that the lanes for the cars were clearly marked. Besides, there were sidewalks alongside the store house. The evidence did not justify the application of the unreasonable risk or dangerous trap doctrine found in Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213; 28 Am. Jur., Negligence, Sec. 96, pp. 754-6, cited by appellants. Neither does the attractive nuisance doctrine have any application in this instance.

Besides in Paramount-Richards Theatres v. Price, 211 Miss. 879, 53 So. 2d 21, it was said: "The owner of the premises is not required to anticipate an unusual and improbable result, such as the injury sustained by the plaintiff in this case. The owner is merely required to anticipate a result that is more apt to happen than not to happen, that is to say he must anticipate only such a result as is reasonably foreseeable as a probable consequence of his act. Gulf Refining Co. v. Williams, 183 Miss. 723, 185 So. 234; Louisiana Oil Corp. v. Davis, 172 Miss. 126, 158 So. 792."

In the case of Jackson v. Pike, 87 So. 2d 410, a Florida case, the facts are strikingly similar and the principles are directly in point. There, the six year old child went with his adult brother-in-law in the car to the defendant's supermarket. On the parking area near the entrance to the store was situated a merry-go-round in much the same fashion as the miniature helicopter in the present case. As soon as the car stopped, the boy alighted, darted toward the merry-go-round, and collided with a car

traveling five to ten miles an hour. Although injured, fortunately he was not killed. The suit, making substantially the same charge of negligence as was stated in the present case, was filed for damages; and, from a verdict and judgment in his favor, an appeal was prosecuted to the Supreme Court of Florida. In reversing the judgment and holding that the trial court should have granted a directed verdict for the defendants, the opinion said: "The general rule of the measure of duty resting on the owners of parking lots is that the owners or operators, extending an express or implied invitation to the public to use the facilities provided, are under a duty to those taking advantage of the invitation, to use reasonable care to see that the premises are in reasonably safe condition for the intended use. See annotation 14 A. L. R. 784. We think it is a matter of common knowledge that customers of supermarkets are often accompanied by their children who are too young to be left at home alone, and the intended use of a parking facility in connection with such an establishment must necessarily contemplate the presence of children of immature age and experience, a fact which is particularly apparent where, when as here, the supermarket operator provides an amusement device for the particular purpose of accommodating such children; and the measure of what is reasonably safe for such intended use of the premises must take that circumstance into account. * * * We think the undisputed facts of the occurrence of plaintiff's injury affirmatively establish that the efficient cause of plaintiff's injury was the plaintiff's impulsive act in darting in front of the slowly moving vehicle by which he was injured."

It was not shown from the evidence, together with the reasonable inferences therefrom, that the appellees in this case were guilty of any negligence which proximately caused or contributed to the tragic and unfortunate death of this little boy. Manifestly the action of

the trial court was correct in granting a directed verdict to find the defendants not guilty, and that action must therefore be affirmed.

Affirmed.

*Arrington, Ethridge, McElroy and Rodgers, JJ.,* concur.