# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CT-00510-SCT

*GREGORY ALLAN JONES AND CONNIE DARLENE*
*JONES, INDIVIDUALLY AND AS PARENTS OF*
*JEREMY ADAM JONES, DECEASED; AND AS*
*PARENTS AND NEXT FRIENDS OF DEVIN TYLER*
*JONES, A MINOR*

*v.*

*JITNEY JUNGLE STORES OF AMERICA, INC. AND*
*McCARTY-HOLMAN COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/95 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN ROBERT WHITE |
| ATTORNEYS FOR APPELLEES: | F. HALL BAILEY |
| | W. TERRELL STUBBS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 11/19/98 |
| MOTION FOR REHEARING FILED: | 12/1/98 |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Greg and Connie Jones filed this wrongful death action against Jitney Jungle Stores of America and McCarty-Holman Company after their three-year old son was hit by a car and died in the parking lot of the Jitney Jungle store in Magee, Mississippi. A Simpson County jury found for Jitney Jungle. The Court of Appeals affirmed the circuit court. Certiorari having been granted by this court, the appellants assign the following as error:

> **I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF THE**
> **SAFETY PRECAUTIONS TAKEN BY THE JITNEY JUNGLE STORES IN**

**CROSSGATES, CLINTON, JACKSON, RIDGELAND, AND CASTLEWOODS.**

**II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE DEFENDANTS TO USE THEIR ACCIDENT RECONSTRUCTIONIST AS A "HEARSAY CONDUIT."**

**III. WHETHER THE TRIAL COURT ERRED BY EXCLUDING THE LAY OPINION OF GREG JONES.**

## STATEMENT OF THE FACTS

¶2. Greg and Connie Jones took their two children, three-year-old Jeremy and one-year-old Tyler, to the Jitney Jungle store on Highway 49 in Magee, Mississippi around 8 p.m. on October 25, 1993. They parked near the north entrance to the store.

¶3. As the family entered the store, Jeremy asked his parents if he could ride the coin-operated truck near the entrance. His mother promised him that he could ride before the family left the store. The family finished shopping and young Tyler began crying at the check-out counter. Connie took Tyler to the car, leaving Greg to pay for the groceries. As the father and son left the store, Jeremy jumped into the coin-operated truck and reminded his father that he had been promised a ride. Greg told Jeremy to stay in the truck as he walked across the street to put the groceries away and to get change for the machine. The family car was approximately 20 feet from the child. Before Greg returned, Jeremy stepped off the curb and into the path of an oncoming car. Greg, realizing his son was about to be hit, ran toward the entrance yelling and waving his hands to no avail. Jeremy was struck by the car and killed.

¶4. Jeremy's parents reached a settlement agreement with the driver of the car. They then filed a wrongful death action against Jitney Jungle Stores of America and McCarty-Holman Company, claiming Jitney Jungle neglected to maintain its parking lot in a reasonably safe manner.

## I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF THE SAFETY PRECAUTIONS TAKEN BY THE JITNEY JUNGLE STORES IN CROSSGATES, CLINTON, JACKSON, RIDGELAND, AND CASTLEWOODS.

¶5. At trial, the appellants sought to introduce photographs of Jitney Jungle stores at other locations to demonstrate that those stores used speed bumps, stop signs, pedestrian crossings, speed limits, or other precautions to deter drivers from speeding through their parking lots. Counsel for Jitney Jungle objected, arguing that the other stores' safety measures were irrelevant and contending that each parking lot has its own peculiar needs and circumstances.

¶6. The trial judge excluded the evidence regarding the other stores stating:

> All right. As I see it, the issue is not whether the parking lot at the subject Jitney Jungle could have been made safer, but whether it was unsafe or, as you put it, Mr. White, dangerous under the circumstances that existed on the 25th of October, 1993. And I'm afraid the photos of the other parking lots, showing speed bumps, directional markings and other safety devices, would tend to cause the jury to believe that the subject parking lot is unsafe simply because the others are more safe. . .and allow them to ignore the circumstances. So, I'll have to stand by my previous ruling and sustain the Motion in Limine.

¶7. The Joneses rely upon the wrongful death action of *Catholic Diocese of Natchez-Jackson v. Jaquith,* 224 So. 2d 216 (Miss. 1969) for their contention that the photographs should have been admitted. In *Jaquith*, a high school boy struck his head against a concrete wall while playing basketball in the gymnasium. The issue at trial was whether the failure to provide protective padding for the rear wall constituted negligence. On appeal, the school argued that the lower court improperly allowed evidence of custom and usage to be introduced.

¶8. We found that evidence of custom and usage can be a relevant consideration in determining negligence. *Jaquith,* 224 So. 2d at 222. However, we have clearly established that while relevant, custom and usage evidence is disfavored and recognized as dangerous. *Meridian Star v. Kay*, 211 Miss. 536, 543-44, 52 So.2d 35, 37 (1951); *Magnolia Lumber Corp. v. Czerwiec Lumber Co.*, 207 Miss. 738, 746, 43 So.2d 204, 205 (1949); *Robinson v. Turfitt*, 192 Miss. 160, 164, 4 So.2d 884, 885(1941). The danger is that the jury will define negligence simply by a departure from custom. For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must outweigh its prejudicial effect. *Robinson,* 192 Miss. at 164, 4 So.2d at 885. We review the trial judge's decisions based on relevancy under an abuse of discretion standard. *Sperry-New Holland v. Prestage*, 617 So.2d 248, 263 (Miss. 1993).

¶9. The trial judge in this case recorded his efforts to balance the probative value of the evidence from other stores against its prejudicial effect. It is clear from the text of his ruling that he believed the pictures and testimony would likely prejudice the jury and would lead them to imply negligence simply because of the discrepancy between measures used at the five other Jitney Jungle stores. The judge properly balanced the evidence and documented his analysis. We find no abuse of discretion in the application of the law to the facts.

¶10. Though the judge denied introduction of the photographs, he allowed full exploration of the issue of safe traffic management. Counsel for the Joneses was allowed to question witnesses fully about the lack of speed bumps and other traffic control devices at the Magee store. Unfortunately for the Joneses, the jury found no liability against Jitney Jungle. Judge Payne, supported by a unanimous Court of Appeals, wrote below "the loss of a child is a deplorable event and a blow to society as well as to the grieving family, but liability must be present for there to be an award against a defendant." We agree.

## II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE DEFENDANTS TO USE THEIR ACCIDENT RECONSTRUCTIONIST AS A "HEARSAY CONDUIT."

¶11. Trooper Cecelia Kazery of the Department of Public Safety testified for the defendants as an expert in the field of accident reconstruction. She was allowed to comment on a statement made by the driver of the car that hit Jeremy. Officer Kazery testified: "[t]he child was alone and not visible, and the father was coming out hollering. And the driver told me that he was looking at the father, and it was making him look to the left as the child was coming from the right." The appellants argue that Officer Kazery's testimony, implicating Greg Jones' distraction of the driver as a cause of the accident, constitutes reversible error. They claim the expert was acting as a "hearsay conduit."

¶12. Since Officer Kazery did not see the accident happen, the appellants contend her conclusions that the child was "running across" the parking lot and that the child was "alone" were hearsay. The driver of the car was available as a witness and the appellants submit it was error to allow the driver's testimony to be recounted by Officer Kazery.

¶13. The permissible bases of experts' opinions are provided for in Miss. R. Evid. 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Miss. R. Evid. 703.

¶14. The COA quotes *Couch v. City of D'Iberville,* 656 So. 2d 146 (Miss. 1995) for the proposition that "[a]n accident reconstruction expert should be permitted to give his opinion on how an accident happened, the point of impact, the angle of travel, *the responsibility of the parties involved,* and the interpretation of photographs." *Id.* at 152 (emphasis added by COA). We agree with this proposition.

¶15. Assuming, *arguendo*, that the court's admission of Officer Kazery's testimony was error, we find it was harmless. There was abundant evidence from other witnesses to support the statements admitted. Greg Jones himself recalled that when he realized what was happening, he began waving his hands and screaming. It is impossible for the appellants to dispute that Jeremy was left alone while his father crossed the road to get change for the coin-operated truck. Therefore, the exclusion of this portion of Officer Kazery's testimony would have not affected the outcome of the trial.

### III. WHETHER THE TRIAL COURT ERRED BY EXCLUDING THE LAY OPINION OF GREG JONES.

¶16. At trial, Greg Jones was asked on direct examination, ". . .[I]f there had been any speed barriers in front of the Jitney Jungle, which would have slowed that car down, based entirely on your perception, would you have been able to get to Jeremy before that car hit him?" The appellees objected to this question and their objection was sustained based on Miss. R. Evid. 701. The appellants assert that the circuit court erroneously excluded Greg Jones' opinion. Jitney Jungle responds that such an opinion "constitutes pure speculation and is not of the type anticipated by Rule 701."

¶17. Under Rule 701, lay opinion is allowed when it meets a two-pronged test. It must (a) be rationally based on the perception of the witness and (b) be helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Miss. R. Evid. 701.

¶18. Greg Jones was at the scene and had first-hand knowledge of the events. However, lay witnesses are not allowed to testify when special experience or expertise is necessary. *Roberts v. Grafe Auto Co.*, 701 So.2d 1093, 1098 (Miss. 1997)(citing *Mississippi State Highway Comm'n v. Gilich*, 609 So.2d 367, 377 (Miss. 1992)). The query to Greg Jones would have required him to render an opinion on the deterrent effect of speed barriers in the parking lot and their impact on a driver's speed. The appellee cites *National Paint & Coatings Ass'n v. City of Chicago,* 835 F. Supp. 414 (N.D. Ill. 1993) as authority negating this testimony. In *National Paint*, the City of Chicago was not allowed to introduce lay opinion testimony of five witnesses to challenge the effect city ordinances would have in decreasing graffiti in Chicago. The court stated that "rendering an opinion as to the anticipated deterrent effect of the challenged ordinances entails much more than drawing conclusions from physical manifestations." *Id.* at 419. The same logic applies here.

¶19. Jones was asked to speculate on the deterrent effect of speed barriers on the typical driver. He lacked sufficient experience and training to render an opinion on this question since it required knowledge beyond his immediate perception. The question required some degree of specialized knowledge which Jones did not possess and failed to meet the requirements of Rule 701. Therefore, the trial court did not abuse its broad discretion in excluding this testimony.

## CONCLUSION

¶20. Finding no error, we affirm the decision of the Circuit Court of Simpson County.

¶21. **AFFIRMED.**

**PITTMAN, P.J., ROBERTS, SMITH AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. PRATHER, C.J., NOT PARTICIPATING.**


**BANKS, JUSTICE, DISSENTING:**



¶22. Because the majority finds that the photographs, depicting safety measures present in the parking lots of other Jitney Jungle stores, were properly excluded and that in any event the exclusion was harmless error, I respectfully dissent.

¶23. The purpose of this evidence was to demonstrate to the jury, by way of comparison, what safety measures were necessary to make the parking lot reasonably safe. The plaintiffs sought to prove that other Jitney Jungle stores in similarly situated geographical areas maintained speed bumps, stop signs, pedestrian crossings, speed limits or other precautions to deter drivers from speeding through their respective parking lots.

¶24. In *Catholic Diocese of Natchez-Jackson v. Jaquith,* 224 So. 2d 216 (Miss. 1969) this Court stated:

> Though argued strenuously by the appellant, we do not find from the record any suggestion that negligence was tested solely by custom and usage. The danger of defining negligence in terms of a departure from custom was recognized by the Court in Robinson v. Turfitt, 192 Miss. 160, 4 So.2d 884 (1941). However, the evidence in each case and the Court's instructions relative thereto are the determining factors as to the standard used by the jury in its deliberations. Prosser on Torts section 33 (3d ed. 1964), explains the reason why such an equation between the two elements should not occur. He states that customs which are entirely reasonable under one set of circumstances may be unreasonable when any one of a number of variables is changed. In 38 Am.Jur.Negligence section 317 (1955) we find that:

> The degree of care which is required of a person either to prevent injury to another or to protect himself is reasonable care under the circumstances. Although subject to certain qualifications, the rule is that upon the issue of negligence or contributory negligence, evidence of the ordinary practice or of

the uniform custom, if any, of persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence.

Evidence of custom and usage in any event is not the ultimate test of negligence, but is admissible solely for the purpose of assisting the jury, along with other evidence, in determining whether the conduct of a party was that of a reasonably prudent man. See 65 A.C.J.S. Negligence § 232 (1966).

*Id.* at 222. The Court went on to rule that the instruction issued to the jury did not equate custom and usage with negligence, but stated only that custom and usage "could be considered with other evidence as a factor in determining whether the [defendant] exercised reasonable care." *Id.* at 223. Such an instruction, stated the Court, was an appropriate description of what the law allowed. *Id.*

¶25. The COA, in its opinion in the present case, chose to overemphasize the jury's tendency to equate custom and usage with negligence. The court stated that "[w]hile we concede that custom and usage evidence has, on occasion, been used to assist the jury in determining whether the conduct of a party was reasonable, we must note that our case law also preaches the danger of defining negligence in terms of a departure from custom."

¶26. In regard to foreseeability, the COA noted Jitney Jungle's reliance on several cases involving assaults on patrons by a third party while on business premises, cases which turned on whether the wrongful act was foreseeable or could have been anticipated by the business. *See Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.,* 519 So. 2d 413, 416 (Miss. 1988); *May v. V.F.W. Post # 2539,* 577 So. 2d 372, 375-76 (Miss. 1991); *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.,* 641 So. 2d 1186, 1192 (Miss. 1994). The COA also quoted at length from *Cole v. Delchamps, Inc.,* 246 Miss. 846, 152 So. 2d 911 (1963), a case with similar facts to the present case. In *Cole,* a child ran ahead of his mother to ride a coin-operated helicopter, and was struck and killed by a car as he ran through the parking lot. *Id.* at 850, 152 So. 2d at 912. The mother sued the store, contending that its failure to provide suitable safety measures in areas to be used by pedestrians constituted negligence and was the sole proximate cause of the death of the child. *Id.* at 851, 152 So. 2d at 913. The defendant was granted a directed verdict, and this Court affirmed, stating:

The owner of the premises is not required to anticipate an unusual and improbable result, such as the injury sustained by the plaintiff in this case. The owner is merely required to anticipate a result that is more apt to happen than not to happen, that is to say he must anticipate only such a result as is reasonably foreseeable as a probable consequence of his act.

*Id.* at 853, 152 So. 2d at 914 (quoting *Paramount-Richards Theatres v. Price,* 211 Miss. 879, 887, 53 So.2d 21, 22 (1951)).

¶27. The COA's reliance on these cases relating to the foreseeability of certain events minimizes the relevant issue in the present case. While foreseeability also goes to the reasonableness of the safety measures in place at the subject store, it is a separate issue from the admissibility of custom and usage evidence. Nothing would have prevented Jitney Jungle from making arguments relating to foreseeability here. That is, the store could have argued that it had no reason to install alleged speed control devices, as had been done in other locations, because there had never been an accident in the parking lot before this one, or any complaints of excessive speed. Despite the remarkable factual similarity between *Cole* and the present case, there was no issue of custom and usage in *Cole.*

¶28. As to the admissibility of custom and usage evidence itself, the law reflects that such evidence is relevant and admissible in determining whether a party has acted negligently. *Jaquith,* 224 So. 2d 222; *Dedeaux v. J.I. Case Co.,* 611 So. 2d 880, 887 (Miss. 1992); *Meridian Star v. Kay,* 211 Miss. 536, 544, 52 So. 2d 35, 38 (1951) ("the common usage of business may be regarded, in a proper case, as one test of negligence."). *See also* Restatement (Second) of Torts § 295 A (1965) ("[i]n determining whether conduct is negligent, the customs of the community, or of others under like circumstances, are factors to be taken into account. . ."). The caveat inherent in our case law is that negligence not be defined, in the jury's mind, by a departure from custom. Such a danger, however, is properly remedied by an appropriate jury instruction. *Jaquith,* 224 So. 2d at 223.

¶29. The plaintiffs may properly introduce evidence of the measures that other stores have taken to control traffic in their parking lots, and the defendants may rebut this with evidence that the subject store is differently situated so as not to require the same measures. The ultimate issue of whether the defendant was negligent is for the jury to determine. In the present case, the jury was deprived of the opportunity to compare the subject store's safety measures with those of other stores which may have been similarly situated. It cannot be said with any certainty that such an exclusion did not affect the verdict which was rendered. Thus, I would find that the trial court erred in excluding the evidence of custom and usage at other Jitney Jungle stores, and remand the case for a new trial on this issue.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**