**AMERINE NATIONAL CORPORATION,**
Plaintiff-Appellee and Cross-
Appellant,

v.

**DENVER FEED COMPANY, a Colorado
corporation, Defendant-Appellant and
Cross-Appellee.**

Nos. 73–1619, 73–1620.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 23, 1974.

Decided Feb. 20, 1974.

---

J. Albert Sebald, of Grant, Shafroth, Toll & McHendrie, Professional Corp., Denver, Colo., for plaintiff-appellee and cross-appellant.

Arthur L. Fine, Denver, Colo., for defendant-appellant and cross-appellee.

Before BREITENSTEIN, Mc-WILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a turkey case. The action in District Court was by Amerine National Corporation to recover from Denver Feed Company for the sale and delivery of 51,000 young turkeys (called poults). These poults were part of a larger order and the balance of the order was paid for. The poults in question were conceded to be "H & N" brand hens and "Amerine" brand toms. In a trial to the court judgment was entered in favor of the plaintiff for the full demand, that is, $22,763.40 plus interest provided in the contract. The defendant's counterclaim in which it sought damages for losses arising from diseases was dismissed. The defendant appealed the judgment in favor of the plaintiff and the plaintiff cross-appealed, asserting inadequacy of the attorney's fee. There had been a course of dealing over several years.

"H & N" is one brand of turkey and "Amerine" is another. It was defendant's position that his preference had always been for the "Amerine" brand and that had been communicated to the plaintiff. Defendant also maintained that "H & N" was a less desirable brand, being less broad breasted than the "Amerine" brand.

The transaction in question commenced in November 1969, at which time defendant placed an order for 154,000 poults to be delivered during the 1970 season The poults were to have

been delivered in 12 different shipments starting January 20, 1970 through July 28, 1970. On November 28, 1969, the defendant's agent wrote to the plaintiff requesting confirmation of shipment dates. Following that, the plaintiff wrote defendant a letter dated December 23, 1969, enclosing a printed form contract of sale which he referred to as a confirmation. This contained the price and the delivery dates.

According to the defendant's testimony he was not aware that "H & N" named poults had been included in the order and the plaintiff's principal officer was not aware of it either until advised of the fact by the defendant's manager. There followed a meeting in Denver. The plaintiff there took the position that "Amerine" meant a turkey sold by it rather than a particular kind of turkey. The other witnesses of the defendant testified that they were not aware of the presence of progeny of "H & N" hens until the middle of 1970. There was also testimony that there were negotiations with respect to this specific breed of turkey.

The trial court placed entire emphasis upon the "written confirmation" and found from that that the contract permitted delivery of poults parented by "Amerine" and "H & N" turkeys. The court was impressed with the fact that the contract did not include the term "Amerine poults" and that the warranty merely declared that all poults and hatching eggs are from turkey breeding stock participating in the disease and selection phases of the National Turkey Improvement Plan as provided in the marketing agreement for poultry and turkey improvement in California as amended and as administered by the poultry improvement advisory board. Also, the court emphasized that stock, as defined in the National Turkey Improvement Plan, is a broad term which includes not only pure strains but strain crosses, breed crosses or any combination thereof. From this the judge concluded that there was a full compliance by the plaintiff with the express warranty and that any implied warranties were eliminated by the disclaimer clauses. The judge also thought that the defendant was precluded from recovering damages for nonconformity of the goods under the Commercial Code by not giving proper notice. The trial court continued that under the custom of the industry the order of a trade name product does not call for a specific breed; that the seller is not limited in his choice of sale stock to its own strain of turkeys but, rather, could breed crosses and sell the product or progeny under its company name. The court ruled out that there were any diseased poults transmitted from the plaintiff's flock and did so because of the deficiency of proof. Review is not sought by the defendant of this ruling.

The points raised by the defendant on this appeal are:

1) That the so-called "written confirmation" contract materially altered the definition of "Amerine" poults which had been previously agreed upon by the parties. It was contended that the trial court erred in refusing to recognize this.

2) That the trial court erred in finding that the defendant had not given prompt notice of non-conformity of tender.

3) On cross-appeal the plaintiff-appellee contends that the court erred in failing to award an adequate amount of attorney's fees in accordance with the written contract which provided that

"customer shall pay costs of collection and in event of suit reasonable attorney's fees."

Examination of the record in this case leads to the conclusion that the decision of the trial court concerning defendant Denver Feed Company's contract liability must be upheld. The findings of fact are adequately supported by the evidence of record and are determinative of the pivotal legal questions here involved.

Defendant's appeal challenges the trial court's finding that the written contract of sale, signed by defendant on December 23, 1969 (Plaintiff's Exhibit 1), was

intended by the parties as a final written expression of their agreement. Defendant asserts (1) that the December 23 document was instead a confirmatory memorandum of a previously reached oral agreement; (2) that the written document stated terms differing from the original agreement, in particular relating to the type of turkey which would be supplied under the contract; and (3) that this change constituted a material alteration of the pre-existing oral contract. Defendant argues that under C.R.S. § 155–2–207(2)(b) this change in the type of turkey to be supplied (cross-breed rather than "pure Amerine") would not become an effective part of the sales contract.

 Without questioning the trial court's fact finding that the December 23 writing was intended to be the final contract between the parties, it is doubtful whether the appeal issue raised by defendant could result in a more favorable outcome to him. The contract between the parties, whether oral or written, was reached in the context of a well established course of dealing between the parties. Denver Feed Company had dealt with Amerine for at least ten years (R.183), specifically including the purchase of turkeys during the two to three years previous to the initiation of this dispute.[1] The record discloses that plaintiff had marketed as "Amerine" turkeys large numbers of cross-breed turkeys intended for commercial use for several years (R.138), including turkeys with H & N bloodlines since at least the mid-1960's (R.255). Thus supplying cross-breed turkeys to its customers under the name "Amerine," a practice clearly permissible under the written contract of sale and the National Turkey Improvement Plan which it incorporated, did not represent a sudden change in practice for Amerine. The evidence showed this to be the course of dealing Amerine had followed for several years with its customers, presumably including Denver Feed Company. It is the policy of the Uniform Commercial Code to consider previous course of dealing in determining the meaning of contract provisions. *See* C.R.S. § 155–1–201(3), § 155–1–205 and comments to § 155–2–202.

The alleged oral contract relied upon in argument by defendant, which it claims was reached by the parties prior to the signing of the "contract of sale", is not delineated with much specificity in the record. Denver Feed's Mr. Norbert Goldman did assert that he expressed to Mr. Amerine his aversion to receiving any "H & N" turkeys during the time period when the "oral agreement" was reached.[2] Mr. Goldman, however, clearly stated that in reaching the informal oral agreement with Amerine, he relied on a course of business dealing which had persisted for several years. R.188–89. Defendant Denver Feed Company introduced no evidence to establish that Amerine had suddenly modified its practice as to the type of turkeys it was supplying to its commercial customers during the 1970 season. Rather, the evidence was to the contrary. Lacking such evidence of a change, an informal oral contract of sale construed in the light of past course of dealing between Denver Feed and Amerine would closely resemble, if not duplicate, the written contract of sale in this case. Certainly the provision allowing the supplying of cross-breed turkeys in fulfillment of the contract would not constitute a material change from past practice. On the basis of the record in this case, it is implicit in the trial court's finding regarding the intended finality of the written contract that such contract did not materially depart from the prior course of dealing.

1. R. 260. At least during the two to three years previous to 1969, the contracts between plaintiff and defendant were in fact reached by Mr. Norbert Goldman of Denver Feed and Mr. Mervin Amerine. These are the same parties who allegedly reached an oral agreement for the sale of the turkeys in question here prior to the signing of the written agreement. R. 188.

2. R. 191. This assertion was directly disputed by Mr. Amerine. R. 259–61.

Hence, that contract accurately reflected the elements of any informal oral arrangements which the parties may have discussed prior to the final signing of the written document.

■ Having sustained the findings of the trial judge that the turkeys delivered to Denver Feed Company were in compliance with the contract between the parties, we need not consider appellant's further question of whether proper notice of breach was given after acceptance of the goods, in accordance with C.R.S. § 155–2–607(3)(a).

## THE AMOUNT OF THE ATTORNEY'S FEES

■ We are unable to agree with the defendant-appellant that the stipulation for attorney's fees is not part of the agreement. The pertinent provision is as follows:

> Accounts 30 days overdue shall bear 10% interest per annum from and after that time and customer shall pay costs of collection and in the event of suit, reasonable attorney's fees.

The trial judge at first denied plaintiff-appellee's request for lawyer's fees. On reconsideration the court fixed the amount of $2,000 as attributable to the plaintiff's case in chief. The worth of the attorney's fees was determined to be larger in respect to overcoming defendant's affirmative defenses and defending against the counterclaims. The court finally stated that in the exercise of discretion the sum of $2,000 was awarded. In view of the law applicable to the collection of attorney's fees, we agree with the trial court's determination.

■ First, unless attorney's fees are authorized by statute or contract, there can be no recovery of such fee. *See* C. J.S. § 50; 15 Am.Jur. §§ 142–146. Spencer v. Murphy, 6 Colo.App. 453, 41 P. 841 (1895); Publix Cab Company v. Colorado National Bank, 139 Colo. 205, 338 P.2d 702, 715 (1959).

Second, the tendency is not to expand the provisions in the statute or contract in an effort to support a recovery for attorney's fees. The equities in this case certainly do not call for any expanded approach.

Third, the contractual provision in the case at bar is narrow. It calls for attorney's fees in connection with the cost of collection of a bill.

In view of the limited and rather narrow scope of this provision, we are not disposed to disturb the exercise of discretion by the trial court who is in the best position to determine reasonableness. *See* North Drive-In Theatre Corp. v. Park-In Theatres, 248 F.2d 232, 239 (10th Cir. 1957).

The judgment of the District Court is affirmed.