BROOM, Justice,
for the Court:
Claim and delivery under Mississippi Code Annotated § 11-38-1 (1972, 1978 Supp.) is the form of this action brought by plaintiff/appellee, Chuck Ryan Cars (Chuck herein), against the defendant/appellant, Tommy Cameron (Cameron herein). The cause originated in the County Court of the First Judicial District of Harrison County, and by agreement of the parties, Judge Daniel D. Guice, sitting as a law court, tried the cause without a jury. In the county court Chuck was given judgment for possession of a 1973 Chevrolet Pickup truck which Cameron had obtained from Chuck pursuant to a vehicle “swap” deal. Cameron then appealed to the circuit court where Judge Leslie Grant considered the appeal based on the county court record pursuant to Mississippi Code Annotated § 11-51-79 (1972). By his judgment which states “no prejudicial error having been found", he affirmed the judgment in favor of Chuck and gave Cameron the option of either paying Chuck the sum of $1,264.58 or delivering the pickup back to Chuck. Aggrieved by the judgment entered by Judge Grant, Cameron appeals here. We reverse.
An alleged agreement to “swap” vehicles led to the parties’ controversy. It appears that Cameron held title, subject to a lien by Hancock Bank (not a party to this suit), to a 1976 Chevrolet Blazer which he exchanged to Bobby Ryan, agent representing Chuck, for a 1973 pickup truck. The dispute evolves from a misunderstanding as to the consideration of the parties other than the mere swapping of vehicles. Cameron contends that the parties contracted that he would obtain title to the 1973 pickup truck free of any liens or further obligations, that Chuck would assume the lien on his Blazer and that he (Cameron) would receive $1,650 in cash from Chuck. Hancock Bank had financed Cameron’s original purchase of the Blazer (which he desired to trade to Chuck) and the balance of $2,914 which Cameron owed to the bank is the underlying matter here in controversy.
Chuck’s version is that Cameron was to be credited with $1,650 against the indebtedness owed the bank and that Cameron would still owe the remaining balance. Cameron denies this. Chuck contends that instead of crediting Cameron for the $1,650, in preparing the trade documents a check signed by Bobby was mistakenly made to Cameron for the $1,650. When the mistake was discovered, Cameron’s wife (acting upon a call from Chuck) brought back the check which Chuck tore up. Cameron’s wife stated that she returned the check to Chuck only because he told her husband that Bobby was not authorized to sign checks for Chuck and that a new check *1307 would be given to her. She testified that Chuck also asked her to bring an extra set of keys which the Camerons had to the 1976 Blazer. She took the keys and gave them to Chuck at the same time she took the check back. According to her testimony, no problem with the “deal” was mentioned until after Chuck had physical possession of both the returned check and the keys. Cameron refused to return the 1973 truck to Chuck, after which Chuck brought this action styled “Declaration and Claim in Delivery” [sic].
Both litigants insisted at trial and in oral argument before us that they had entered into a contract with each other based upon a full and complete (though different) understanding of the details of the vehicle “swap”. Despite this fact the county court found that there was not established a “meeting of the minds”, and therefore no contract existed between them. Pertinent to an understanding of the case is (in the record) a document (prepared by Chuck) executed by the parties entitled “RETAIL BUYER’S ORDER”. This document shows that the total cash delivered price of the pickup which Cameron was purchasing from Chuck is the sum of $3,707.50 ($3,695 for the truck plus $12.50 for title and fees). According to the document, the Blazer as a “trade-in vehicle” was valued at $5,345, with a balance owed of $2,914.58 (nowhere is it stated to whom or by whom this balance is owed); below that appears the following language: “difference 1650.00”.
Of course, one conflict in the testimony was, whether as between these parties, Cameron would owe any further sum. The “RETAIL BUYER’S ORDER” does not show that he owed anything but it does show that there was a difference after the trade-in of $1,650. The instrument was ambiguous as to whom the difference was payable. Cameron testified and presented the testimony of all other people present when the alleged trade was made, except Bobby Ryan, and all of them upheld his version that he would have no further obligation and that he would actually receive $1,650 from Chuck. Again, there was not presented the testimony of Bobby Ryan who was the salesman representing Chuck in the negotiations with Cameron, and no reason is shown why Bobby Ryan (Chuck’s brother) was not presented as a witness for Chuck.
In contradiction to the testimony of Cameron and his witnesses was the testimony of Chuck who was permitted to testify that when the discussions were going on between Cameron and Bobby, he (Chuck) by telephone told Bobby certain things about the transaction which tends to contradict the version given by Cameron.
Applicable here is the rule that ambiguities in a written instrument will be most strongly construed against the preparer (Chuck). We think the overwhelming weight of the testimony leads to the inescapable conclusion that, regardless of whether it would be a good and profitable trade for Chuck in dollars and cents, there appears to have been an agreement between Cameron and Bobby Ryan, Chuck’s authorized agent and brother, that in the trade Cameron would receive the pickup truck. The physical acts of the parties (as is usually true) speak louder than words. Considerable significance must be attached to the fact that Bobby as Chuck’s agent allowed Cameron to depart the business driving the pickup truck, with Bobby keeping the 1976 Blazer, at which time he (Cameron) had been delivered Chuck’s check for $1,650. These uncontradicted facts indicate strongly that the version presented in court by Chuck was not that agreed upon between his agent Bobby and Cameron. Therefore, we conclude that the judgment of the county court, as affirmed by the circuit court, was against the overwhelming weight of the evidence and must be reversed and rendered. Judgment accordingly will be entered here dismissing Chuck’s action asserting the right of possession of the vehicle. This was strictly a possessory action in law (not an equity action) and the only right adjudicated by us is the right to possession of the 1973 pickup truck. Had the litigants elected to do so, they perhaps could have had all the issues settled by one action in an equity court.
*1308 Attached to Cameron’s Answer was a pleading entitled “Affirmative Defense and Cross Claim” by which he demanded a $5,000 judgment against Chuck. This pleading charged Chuck with a “fraud upon the court” and with obtaining the $1,650. check from Cameron’s wife by “trick”. No language in this pleading alleged how or in what amounts Cameron was damaged by the alleged “fraud upon the court” or by the alleged “trick”. Assuming, but not deciding, that such a “cross claim” may be asserted in response to the pure possessory action begun by Chuck, the “cross claim” was insufficient to state an action cognizable by the Court. Thus, the lower court did not err in rejecting the “cross claim”.[1]
We make no adjudication of any other rights and obligations which may exist by or between either of the litigants and any other entity not a party to this action.
There were other questions raised in the briefs but none of them merit discussion.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.

. See Finance America Private Brands, Inc. v. Durbin, 370 So.2d 1356 (Miss.1979) where we discussed allowing assertion of a damage claim as a response to a possessory action.