**H & W INDUSTRIES, INC.,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**OCCIDENTAL CHEMICAL CORP.,**
**Defendant–Appellant,**
**Cross–Appellee.**

**No. 89–4083.**

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1990.

---

Shelby D. Goza, Ethridge, Grisham & Goza, Oxford, Miss., for defendant-appellant.

Thomas D. Keenum, Sr., Keenum & Keenum, Booneville, Miss. and James R. Moore and Susan H. Rushing, Copeland, Cook, Taylor & Bush, Jackson, Miss., for plaintiff-appellee.

Before REAVLEY, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

In this diversity action, Occidental appeals the district court's ruling on the admissibility of parol evidence and the court's denial of its motion for a new trial. H & W cross appeals, objecting to the court's denial of its request for prejudgment interest. Finding no error, we affirm.

*Facts and Proceedings Below*

H & W is a Mississippi corporation that manufactures PVC pipe. Occidental produces resin, the primary ingredient in PVC pipe, and sells it to manufacturers such as H & W. Randall Heath, the president of H & W, negotiated the purchase of all resin used by H & W. David Batchelor, the Occidental sales representative assigned to the Mississippi territory, had called upon Heath before, but had never contracted to sell resin to him until the October 1984 sale that led to this litigation.

In the months preceding the sale to H & W, the resin market had declined rapidly, and Occidental projected that prices and demand would continue downward. In an attempt to revive slumping sales, Occidental initiated a sales incentive program that provided cash bonuses to salesmen who signed new accounts. To qualify, however, the customer must have agreed to purchase at least one rail car of resin each month for at least three months.

At the time Batchelor contacted Heath, H & W was buying resin from its other suppliers at $.185 per pound. Heath indicated to Batchelor that he would buy from Occidental only if its price was competitive. Batchelor obtained permission from his superiors to sell ten carloads at the $.185 per pound price, and later persuaded Heath to increase his order to fifteen carloads over a three-month period so that Batchelor could receive the cash bonus. After receiving authorization for the sale of fifteen carloads, Heath provided Batchelor with the specific shipment dates for the resin.[1]

The next day, H & W sent Occidental a purchase order that reflected the terms of their oral agreement. The order specified fifteen "cover-hopper cars of ... resin at $.185 per pound." The $.185 price also appeared in the appropriate column on the order form. The shipment dates discussed by Heath and Batchelor were also listed on this purchase order. On this same day, Batchelor called in H & W's order to Occidental's purchasing department, and this department issued its own order form, which recited the same terms as the H & W purchase order.

From the information listed on the Occidental purchase order, Occidental's customer service department prepared and sent an order acknowledgment form, which again recited the fifteen-car quantity, the $.185 per pound price, and the shipment dates.[2] Pursuant to the terms of the agreement, Occidental shipped the first five carloads of resin to H & W in mid-October at a price of $.185 per pound.

In late October, contrary to market projections, resin prices began to rise. Occidental advised H & W that the November shipment of resin would cost $.23 per pound, and the December shipment $.28 per pound. In reply, H & W sent a mail-

---

1. According to the shipment schedule, five carloads each would be shipped in October, November, and December.

2. Printed on the back of this order acknowledgment form are "boilerplate" provisions that pur-

portedly govern the contract. At issue in this suit is Item 2, which provides: "Prices and terms of payment are subject to change without notice and will be those in effect on date of shipment."

gram requesting that Occidental fulfill its obligations under the terms of their agreement and warning Occidental of the production delays that would result from Occidental's refusal to perform. Occidental informed H & W that, relying on the boilerplate provision on the back of the order acknowledgment form, it would not sell the remaining ten cars at the $.185 price. H & W again demanded performance of their oral agreement. Occidental replied that it would regard H & W's refusal to buy at the increased price as a repudiation of their contract.

H & W filed suit against Occidental for actual and consequential damages resulting from Occidental's alleged breach of contract. Occidental counterclaimed for the unpaid price of the October shipment. The district court granted summary judgment against H & W for the price of the shipment, and this judgment was satisfied by H & W. At a trial on the H & W claim the jury found that H & W had sustained damages of $135,000 as a result of Occidental's breach. Additionally, it found that H & W was entitled to $75,040 in consequential damages.[3] Occidental moved for a new trial, asserting that the district court erred in excluding evidence of industry custom. Occidental also challenged the court's ruling on a proposed jury instruction regarding the effect of the writings between the parties and on the jury's award of consequential damages. The district court denied the motion for a new trial as well as H & W's request for prejudgment interest. This appeal and cross appeal followed.

*The Evidentiary Ruling*

■ A trial judge's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. *Jon–T Chemicals, Inc. v. Freeport Chemicals, Inc.*, 704 F.2d 1412, 1417 (5th Cir.1983). However, where the admissibility determination necessarily involves a substantive legal decision, the court should review *de novo* the validity of the underlying legal analysis. *See United States v. Beechum*, 582 F.2d 898, 909–18 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Robinson*, 700 F.2d 205, 210 (5th Cir.1983), *cert. denied*, 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984).

The appellant submits that evidence of trade usage regarding resin pricing should have been admitted to verify the terms of the oral contract between Heath and Batchelor. Occidental relies on Miss.Code Ann. § 75–2–202, which authorizes the introduction of extrinsic evidence to explain or supplement ambiguous terms in a contract.[4] The District Court ruled that the evidence proffered by Occidental failed to meet the admissibility standards of 75–1–205(2) because "the parallel between the ... agreement in the case *sub judice* and the third party sales has not been established." Absent a proper foundation, the court concluded the trade usage evidence would be unfairly prejudicial and misleading to the jury. We find that the district court properly excluded this evidence.

■ Miss.Code Ann. § 75–1–205(2) defines trade usage as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." *See General Plumbing and*

---

3. H & W submitted evidence that due to the low inventories maintained by both resin suppliers and pipe producers it was unable to purchase any resin to replace the Occidental shipments until January of 1985. It was required to pay an additional $.075 per pound for this resin, and the delay caused a temporary shut-down in its Kentucky plant.

4. Miss.Code Ann. § 75–2–202 provides in full: *Final written expression; parol or extrinsic evidence.*
   Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement of a contemporaneous oral agreement but may be explained or supplemented
   (a) by course of dealing or usage of trade [§ 75–1–205] or by course of performance [75–2–208]; and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

*Heating, Inc., v. American Air Filter Company, Inc.,* 696 F.2d 375 (5th Cir.1983). To establish "regularity of observance," the proffering party must demonstrate a dominant pattern of use within the industry. The testimony of one officer as to that company's practices is generally insufficient to establish such a pattern. *First Flight Assoc., Inc. v. Professional Golf Co.,* 527 F.2d 931 (6th Cir.1975); *Encyclopedia Britannica, Inc., v. S.S. Hong Kong Producer,* 422 F.2d 7 (2d Cir.1969); *Magnolia Lumber Corp. v. Czerwiec Lumber Co.,* 207 Miss. 738, 43 So.2d 204 (1949).

If the evidence proffered relates to dealings with a third party, rather than to prior dealings between the litigating parties, courts have noted that "[s]ubsidiary evidence of parallelism must be strong and convincing ... [and] standards of admissibility should be higher than when dealing with transactions between the same parties." *Cibro Petroleum Products v. Sohio,* 602 F.Supp. 1520, 1551, *aff'd* 798 F.2d 1421 (Emer. Ct.App.1986), quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* § 406[03] at 406–18 (1982).[5]

■ Applying these principles, we conclude the district court properly excluded Occidental's proffered trade usage evidence. Heath testified that Occidental had never entered into a three-month contract prior to the time it contracted with H & W. The evidence submitted related to third party contracts of either a twelve-month duration or a single delivery. Furthermore, as the district court noted, the slumping resin market and the new bonus incentive program further distinguished the H &

W contract from the other agreements Occidental sought to introduce.

Because of the unique duration of this contract, the peculiar state of the resin market at the time of its confection, and the incentives created by the new bonus plan, there is no credible trade usage evidence that Occidental could have properly introduced. Furthermore, the sole testimony of Occidental's employee, David Heath, could not be sufficient to establish the "regularity of observance" required by Miss.Code Ann. § 75–1–205(2).[6] The district court properly excluded this evidence.

*The Jury Instruction*

■ The appellant contends the district court erred in refusing proposed jury instruction D–3 regarding the effect of conflicting or ambiguous terms in writings confirming an oral contract.[7] Appellant relies on Miss.Code Ann. § 75–2–207(3), which provides that the terms of a confirmed oral contract "consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provision of this code." The district court rejected Occidental's contention that the boilerplate provision created an ambiguity or conflict with the price contained in both parties' purchase orders. The court concluded that "any ambiguity created in this case by the exchange of documents is unilaterally created by the defendant," and refused to give the instruction that the price terms should "drop out" of the contract. We find no error in the district court's assessment.

> "Therefore, if you find, from a preponderance of the evidence that [Batchelor and Heath] did in fact form an oral contract over the phone for the sale of 15 [cars of resin], and that each party sent written confirmations of their contract, then you must find that a contract was formed and that the terms of the contract between Occidental and H & W were the terms upon which both memoranda agreed. The price term, which was in disagreement, would, consequently, drop out, and the price term would be filled in by reference to the Uniform Commercial Code."

5. *Accord Federal Express Corp. v. Pan American World Airways,* 623 F.2d 1297 (8th Cir.1980); *Joseph v. Krull Wholesale Drug Co.,* 147 F.Supp. 250, *aff'd,* 245 F.2d 231 (3d Cir.1957); *Amerine National Corporation v. Denver Feed Co.,* 493 F.2d 1275 (10th Cir.1974).

6. Because we find that Occidental cannot produce evidence sufficient to meet the standards for admissibility, we need not reach the question of whether this contract was so ambiguous as to warrant resort to *competent* extrinsic evidence.

7. The refused instruction provided in pertinent part:

The typewritten provisions on the purchase order forms and the order acknowledgment form take precedence over the printed boilerplate provisions. As the Mississippi Supreme Court noted in *Holifield v. Perkins*, 233 Miss. 876, 103 So.2d 433, 434 (1958), this is because "the printed form is intended for general use without reference to particular objects and names." Likewise, printed form provisions are construed strictly against the drafter. *C. Itoh & Co. (America) Inc., v. Jordan International Co.*, 552 F.2d 1228 (7th Cir.1977); *Cameron v. Chuck Ryan Cars*, 374 So.2d 1305 (Miss.1979.)

We find the case of *Scott Brass, Inc. v. C & C Metal Products*, 473 F.Supp. 1124 (D.C.R.I.1979), decided under the same provision of the U.C.C., to be remarkably similar to this dispute. In that case, the plaintiff and the defendant orally contracted for the purchase of brass strips at a specified price. The defendant later sent an order acknowledgment containing boilerplate language similar to Occidental's. The court found that the boilerplate provisions did not govern the contract price because they had not been discussed when the contract was confected. As appellee argues, it is the boilerplate provision that constitutes the conflicting term in the written confirmation; the quantity, shipment schedule, and price per pound were all clear from the face of all the documents. The district court properly refused proposed jury instruction D–3.[8]

### Consequential Damages

■ The appellant submits that the jury's award of consequential damages was contrary to the evidence regarding H & W's ability to cover.[9] The question of whether a buyer has made a reasonable attempt to cover is within the purview of the jury. *Transammonia Export Corp. v. Conserv, Inc.*, 554 F.2d 719 (5th Cir.1977). The findings of the jury are given deference and will not be overturned if "the record contains any competent and substantial evidence fairly tending to support the verdict … even if different inferences and conclusions also might be supported by the evidence." *Stewart v. Thigpen*, 730 F.2d 1002, 1007 (5th Cir.1984); *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985).

The availability of substitute resin was a highly contested issue at trial. The jury assessed this evidence and concluded that although H & W had made reasonable attempts to purchase substitute resin, the tightness of the market frustrated their efforts.[10] We have reviewed this evidence and find no reversible error in the jury's finding.

### Prejudgment Interest

■ On cross-appeal, H & W submits that the district court erred in not awarding prejudgment interest. In a diversity action, state law governs the award of prejudgment interest. *Smith v. Industrial Constructors, Inc.*, 783 F.2d 1249 (5th Cir. 1986). Under Mississippi law, the trial court has discretion to award prejudgment interest where the facts and circumstances of the case justify its allowance. *Glantz Contracting Co. v. General Electric Co.*, 379 So.2d 912 (Miss.1980).

■ Although not foreclosed, prejudgment interest awards are generally denied in a breach of contract action where the claim is unliquidated. *Merchants &*

---

**8.** Appellant complains that it was not allowed to submit the boilerplate provision to the jury for its consideration. This is not true. A sample order acknowledgment form, complete with the disputed provisions, was admitted into evidence. As the district court noted: "The jury has both documents before it. The documents are clear in the conflict, particularly in the Defendant's [order acknowledgment form] and the Plaintiff's [purchase order form]."

**9.** Miss.Code Ann. § 75–2–712 defines cover as the buyer's good faith attempt to mitigate his losses by purchasing substitute goods within a reasonable time. Failure to cover does not deprive the buyer of all remedies, but he may not recover consequential damages. Miss.Code Ann. § 75–2–713.

**10.** Heath did admit that some substitute resin was available in early November. This is irrelevant as to H & W's ability to cover because it pre-dates Occidental's confirmation of its intent to repudiate the contract. Occidental's own internal memorandum admits that by mid-November 95% of all resin available on the market had been committed to other purchasers.

**1124**

*Marine Bank v. Douglas Guardian Corp.,* 801 F.2d 742 (5th Cir.1986). The district court concluded that because resin prices and the ability of H & W to cover were contested issues affecting the measure of damages, the claim was unliquidated and prejudgment interest was improper. This decision is within the sound discretion of the trial court, and we will not disturb it on appeal.

The judgment of the trial court is in all respects

AFFIRMED.